## THE STATE v. McGUIRE, Appellant.

**Division Two, January 31, 1906.**

1. **BURGLARY: Chicken House: Information: Specifying Goods.** An information charging the defendant with burglariously breaking into and entering a chicken house, is sufficient if in the language of the statute. It is not necessary that it describe any property kept in the house or allege that the "goods, wares, merchandise or other valuable thing" kept therein was the subject of larceny.

2. ———: ———: **Ownership: Proof.** It is not necessary that there be direct evidence of the ownership of the chicken house burglariously broken into. If it be shown that the person alleged to be the owner was in the actual possession of the chicken house at the time of the burglary, that is sufficient proof of ownership.

3. ———: ———: **Instructions.** A series of instructions set out in the statement are held, when taken as a whole, to have presented very fairly to the jury a case of burglariously breaking into a chicken house in the nighttime.

4. ———: ———: **Sufficiency of Evidence.** The evidence in this case is held sufficient to sustain the verdict finding that defendant in the nighttime turned the fastening of the door of a chicken house and forcibly entered the same against the consent of the owner.

5. ———: ———: Instructions: Definition of Goods, Etc. It is not necessary to give an instruction defining the words "goods, wares and merchandise and other valuable thing" used in the indictment which follows the language of the statute making it a felony to burglariously in the nighttime break into and enter a chicken house in which are kept or deposited such things.

6. ——— ———: Evidence: Weight: Sufficiency. An assignment that the verdict is against the weight of the evidence, is an admission that there was some evidence tending to show defendant's guilt, and hence this court cannot interfere if there was any substantial evidence of his guilt, for the weight of the evidence is for the consideration of the jury. But the fact that defendant sold a turkey and a number of chickens suiting the description of those stolen from the chicken house; that the door had been fastened the night before and on the next morning was unfastened and the chickens and turkey missing; that tracks led through the snow to and from the chicken house to the public road and there disappeared; that wagon and freshly-shod horse tracks led from that point to a livery stable in town; that the owner of the stable had on the previous night hired a buggy to defendant, who stated at the time that he was going to take a girl to the country after church and took it about nine o'clock, stating he would return at nine the next morning; that he did return at that time, the buggy showing chicken feathers and other chicken litter; that the owner trailed the buggy and horse tracks to that stable, and then went to a poultry yard and found that defendant had at half-past eight o'clock sold a turkey and the chickens there, all point strongly to his guilt, and in the absence of any explanation from him authorized a verdict against him.

Appeal from Audrain Circuit Court.—*Hon. Jas. D. Barnett,* Judge.

AFFIRMED.

*Clarence A. Barnes* for appellant.

(1) The amended information does not state facts sufficient to advise appellant of the offense with which he is charged, and does not state facts sufficient to constitute a public offense. (a) It fails to allege ownership of the chicken-house to be in anyone at the time of the alleged offense. 1 Bish. New Crim. Proc., secs. 408, 410, 412; State v. Seward, 42 Mo. 206; State v. Broeder,

90 Mo. App. 156. (b) It fails to allege and describe any property kept or deposited in the chicken-house answering the description of "goods, wares and merchandise, or other valuable thing," and thereby enable the court to see that the property was such as in law is the subject of larceny, and the defendant to know what it was he is charged with attempting to steal. 2 Bish. New Crim. Proc., sec. 702; State v. Dawes, 75 Me. 51; State v. Patrick, 79 N. C. 655; State v. Morey, 2 Wis. 494. (c) It fails to allege that the goods, wares and merchandise or other valuable things were "then and there" kept or deposited in the chicken-house. Reg. v. Clarke, 1 Car. & K. 421; 2 Arch., p. 329; State v. Hardwick, 2 Mo. 226; Jane v. State, 3 Mo. 61; State v. Hagan, 164 Mo. 654. (d) It does not allege that the chicken-house was a building "then and there" the property, etc., thereby omitting to allege ownership of the building to be in any person other than defendant at the time of the alleged offense. State v. Jones, 168 Mo. 398; State v. Broeder, 90 Mo. App. 156. (2) The court erred in giving erroneous instructions for the State, and refusing proper instructions requested by the defendant.

*Herbert S. Hadley*, Attorney-General, and *N. T. Gentry*, Assistant Attorney-General, for the State.

(1) The information, which was duly verified by the affidavit of the prosecuting attorney, was sufficient. It is based on the act of the General Assembly, passed and approved on May 31, 1899, and follows the language of said statute. State v. Helms, 179 Mo. 280; Laws 1899, 161. (2) No error was committed by the court in refusing defendant's two instructions. The first one told the jury that chickens and turkeys were not goods, wares, merchandise or other valuable thing contemplated by the statute. This instruction was declared to be erroneous by this court in a similar case. State v. Helms, 179 Mo. 280. The second refused instruction told the jury

that there was no evidence that defendant was guilty of larceny from the building alleged to have been burglarized. Under the information and under the statute, it was not necessary to prove that defendant was actually guilty of larceny. All that the statute denounces is the breaking into a house (not subject of burglary in the first degree) with the intent to commit larceny. State v. Peebles, 178 Mo. 484. (3)   The State's instructions on the subject of burglary in the second degree, reasonable doubt, burden of proof, weight of evidence and credibility of the witnesses, were proper and have often been approved by this court. State v. Peebles, 178 Mo. 482. The recent possession of stolen property is evidence from which the jury may convict the defendant not only of larceny, but also of burglary. State v. Yandle, 166 Mo. 589. (4)   The evidence for the State conclusively showed that defendant was guilty as charged. State v. Warford, 106 Mo. 55.

BURGESS, P. J.—On an information presented by the prosecuting attorney within and for Audrain county, charging the defendant with burglary in the second degree, in burglariously breaking into and entering a chicken-house, being a building belonging to and the property of another, to-wit, one Lee Stewart, with the intent and purpose to steal certain goods, wares and merchandise and other valuable things kept and deposited therein, defendant was, at the January term, 1905, of the circuit court of said county, convicted of the offense charged, and his punishment fixed at three years' imprisonment in the penitentiary. After unsuccessful motions for a new trial and in arrest, defendant appeals.

The salient facts are about as follows:

Lee Stewart, whose chicken-house defendant is charged with burglarizing, lived at the time on a farm about eight miles east of Mexico. He owned two turkey hens and sixty-seven chickens which he kept in a

chicken-house situated on his farm, near his dwelling. On Sunday evening, January 8, 1905, these turkeys and chickens were put into the chicken-house and the outside door securely fastened with a button. A light snow fell after ten o'clock that night. On going out in the yard, Monday morning, Mr. and Mrs. Stewart discovered the chicken-house door unfastened and open, and that one turkey hen and twenty-five of their chickens were gone. The chickens would have weighed, on an average, five and a half pounds each, and the turkey hen would have weighed about fifteen pounds. Stewart also discovered the tracks of a man leading from the chicken-house across the yard, and down the public road. The tracks indicated that the man had made three trips to the chicken-house, and they led back to a point on the road where it appeared a buggy and two horses had been standing in the snow. These tracks came from the direction of Mexico and led back in the same direction. Both horses had been shod, so that Stewart and his son had no trouble in tracking them all the way to Mexico. On reaching that town, Stewart went to the livery stable of A. M. Barnes, where he was shown a buggy which defendant had used the night before. It was a two-horse buggy, and had in it some chicken feathers and other chicken litter. Defendant had hired this buggy and team at nine o'clock, Sunday night, saying at the time that he wanted to drive a girl to the country after church, and that he would be gone all night. He returned to the livery stable about 9 o'clock Monday morning. About half past eight o'clock, the same morning, defendant appeared at the poultry house of Sam Wayne, in Mexico, to whom he sold one turkey hen weighing fifteen pounds, and 132 pounds of chickens. Wayne testified that the defendant carried the fowls that he purchased from him in two sacks; and some under the buggy seat; that the turkey and chickens were at once killed and picked, and in about an hour Mr. Stewart came in and inquired for his fowls.

The defendant's evidence tended to show that Stewart, in a conversation had with witness Edward Rodhouse, said that the chicken thief drove in a wagon, which he afterwards called a rig; that one inch of snow fell sometime between seven o'clock Sunday night and seven o'clock Monday morning, and that the thermometer that night was eleven degrees above zero.

The information, leaving out the formal parts, is as follows:

"Now comes John D. Orear, prosecuting attorney within and for Audrain county, Missouri, upon his official oath and upon his information, knowledge and belief, and informs the court that at the county of Audrain and State of Missouri on the 8th day of January, 1905, one Jack McGuire did then and there feloniously and burglariously break into and enter in the nighttime a chicken-house being a building belonging to and the property of another, to-wit, one Lee Stewart, there situate, by unfastening the latch of an outer door and forcibly pushing said door open—said building being one in which there was at that time goods, wares and merchandise, and other valuable things kept and deposited, with the intent the goods, wares and merchandise and other valuable things there kept and deposited to steal, take and carry away, against the peace and dignity of the State."

At the close of all the evidence defendant asked instructions in the nature of demurrers to the evidence, which were refused by the court, and defendant saved his exceptions.

The following instructions were given by the court:

"1. If the jury believe from the evidence in the cause, and beyond a reasonable doubt, that the defendant, on or about the 8th day of January, 1905, at the county of Audrain, and State of Missouri, broke into and entered, in the nighttime, the chicken-house of one Lee Stewart, by forcibly unfastening the latch of the outer door of said chicken-house building and forcibly

pushing said door open, and that there were at said time in said chicken-house building goods, wares and merchandise, and other valuable things, to-wit, chickens and turkeys kept and deposited, and further believe from the evidence, and beyond a reasonable doubt, that the defendant did so break into and enter said chicken-house building with the intent of stealing, taking and carrying away, converting to his own use, and of depriving the owner permanently of his property, and against the owner's consent and without any honest claim of right thereto, any of the chickens and turkeys then in said chicken-house and belonging to said Lee Stewart, then the jury will find the defendant guilty of burglary in the second degree, and will assess his punishment at imprisonment in the penitentiary for a term of not less than three years.

"2. You are further instructed that you are the sole judges of the weight of the evidence and the credibility of the witnesses, and in passing upon such weight and credibility, you may take into consideration the demeanor of the witness on the stand, his or her interest, if any, in the result of the suit, his or her prejudice or bias, if any, either for or against the accused, his or her opportunities for knowing the facts to which they testify and dispositions to relate them truly and correctly or otherwise, the probability or improbability of his or her statements on the stand, as well as all the facts and circumstances given in evidence. And you are further instructed that if you believe that any witness has intentionally testified falsely as to any material fact in the case, then you are at liberty to disregard all or any part of the testimony of such witness or witnesses.

"3. You are further instructed that the law presumes the defendant innocent of the charge, and that the burden rests on the State to show to you from the evidence in the case, his guilt, as charged, beyond a reasonable doubt. If you have a reasonable doubt of his guilt you will give him the benefit of such doubt and

acquit him, but a doubt sufficient to justify an acquittal on that ground should be a substantial doubt touching his guilt, and not a mere possibility of his innocence.

"4. The jury are instructed that there can be no conviction in this case unless they believe from the evidence, and beyond a reasonable doubt, that the defendant actually entered, by forcibly unfastening a latch or other secure fastening, a building which was just before such entering by the defendant so securely fastened as to all of its openings that no one could enter said building without using some force. And that there was within said building at the time of such entering, goods, wares and merchandise, or other valuable things, and that the defendant forcibly entered said building for the purpose and with the intent of stealing the same or some part thereof and for no other purpose.

"5. The jury are instructed that there is no charge of larceny in this case, and although the jury may believe that the defendant stole the chickens and turkey, they will nevertheless acquit unless they believe, beyond a reasonable doubt, that the defendant is guilty of burglary, as defined in the other instructions."

To the giving of such instructions defendant, by his counsel, then and there excepted and saved his exceptions.

At the request of defendant, the court gave the jury the following further instructions:

"The court instructs the jury that to constitute a burglary there must be an entry effected by means of a breaking of the building itself, or the opening by force of a closed fastening, and an unlawful entry through an open door or window does not constitute burglary.

"The court instructs the jury that the felonious intent to commit a crime within a building is a separate element of the offense, and, in order to convict of a burglary, there must be proof of some fact or circumstance or some act or declaration of the defendant in

addition to the proof of a mere breaking and entering from which the jury can find such an intention.

"To warrant a conviction on circumstantial evidence, each fact necessary to the conclusion sought to be established must be proved by competent evidence beyond a reasonable doubt, and all the facts necessary to such conclusion must be consistent with the main fact sought to be proved; and the circumstances taken together must be of a conclusive nature, leading on the whole to a satisfactory conclusion and producing a reasonable and moral certainty that the accused, and no other person, committed the offense charged; the mere union of a limited number of independent circumstances, each of an imperfect and inconclusive character, will not justify a conviction; they must be such as to generate and to justify full belief according to the standard rule of certainty.

"It is not sufficient that they coincide with and render probable the guilt of the accused, and they must exclude every other reasonable hypothesis.

"No other conclusion but that of the guilt of the accused must fairly and reasonably grow out of the evidence, and the facts must be absolutely incompatible with innocence, and incapable of explanation upon any other reasonable hypothesis of guilt.

"The court instructs the jury that by 'building,' as used in these instructions, is meant a structure erected by the hands of man, and which is wholly closed or capable of being closed.

"The court instructs the jury that if from the evidence offered by the State, or if from the lack of testimony on the part of the State, you entertain a reasonable doubt of defendant's guilt, he is entitled to acquittal, and in such case, under the law, it is your duty to acquit him without considering which side has offered whatever testimony was given in the case.

"The court instructs the jury that in this case the State depends upon circumstantial evidence alone to

establish the perpetration of the crime itself, and to identify the defendant as the one who perpetrated the crime, and you are instructed that all the facts and circumstances relied upon by the State as establishing the perpetration of the crime, and the identity of the defendant must be consistent with each other and with the facts sought to be established, and wholly inconsistent with any other possible conclusion than that the crime was in fact committed and the identity of the defendant as the person who committed it.

"The court instructs the jury that the information in this case is a mere formal accusation against the defendant, that it is absolutely no evidence of his guilt, and no juror should permit himself to be influenced against the defendant because of the indictment having been found against him.

"The court instructs the jury that the probability of defendant's guilt, as charged in the information, is not sufficient to warrant a conviction, nor is it sufficient that the greater weight or preponderance of the evidence supports the allegations in the information, nor is it sufficient that upon the doctrine of chance it is more probable that the defendant is guilty.

"To warrant a conviction of the defendant, he must be proved to be guilty so clearly and conclusively that there is no reasonable theory upon which he can be innocent, when all the evidence in the case is considered together.

"The court instructs the jury that the burden of proof to establish the guilt of the defendant devolved upon the State throughout the entire trial, and the law clothes the defendant with the presumption of innocence, which attends and protects him until overcome by competent evidence which proves his guilt to your satisfaction beyond a reasonable doubt.

"It is not sufficient in this case that there may be a suspicion or possibility or probability of his guilt, nor can his guilt be arrived at by guessing, or a compromise

among the jurors themselves, or by a compromise in the minds of any one juror, but the testimony must be of a nature that when you have considered it all you find a clear and abiding conviction of the guilt of the defendant beyond a reasonable doubt. This much is required by the law; if this much has not been proven, you will find the defendant not guilty.''

Many objections are urged against the information, most of which are without merit, and only such as appear meritorious will be noticed.

Defendant contends that the information fails to allege and describe any property kept or deposited in the chicken-house answering to the description of ''goods, wares, and merchandise,'' or other valuable thing,'' and thereby enable the court to see that the property was such as, in law, is the subject of larceny, and the defendant to know what it was he was charged with stealing.

Practically the same question was before this court in the case of State v. Helm, 179 Mo. 280, in which the defendant therein was charged with feloniously and burglariously breaking into a certain chicken-house belonging to Charles Trampe and his wife, Anna E. Trampe, and stealing therefrom eleven chickens of the value of two dollars and seventy-five cents, GANTT, J., speaking for the court, said: ''Nor does it make the slightest difference that the chickens are driven or voluntarily go into the chicken-house at night to roost, and are then locked or fastened in, instead of catching them and putting them in by force. The language of the statute is, 'in which goods, wares, merchandise or other valuable thing is kept or deposited.' The poultry product of Missouri is to-day one of its chief sources of wealth, and chickens locked up in a hen-house at night are *kept* therein as much as wheat deposited in a granary or storehouse, and the intention of the Legislature it to protect one as much as the other from prowling

thieves, such as the evidence tends to show defendant was. The recent act of the Legislature, approved March 18, 1903, making the stealing of any domestic fowl from the premises on which any dwelling-house is situated grand larceny, irrespective of its value, strongly enforces the intention of the Legislature to eradicate this offense.'' This decision clearly recognizes the idea that chickens and all kinds of poultry are valuable things within the meaning of section 1886, Revised Statutes 1899, upon which the information is based. The information charges the offense in the language of the statute, and is in approved form. [Kelley's Crim. Law and Prac., sec. 609; State v. Tutt, 63 Mo. 595; State v. Henley, 30 Mo. 509.]

It is said for defendant that the court erred in refusing to give the instruction asked by him at the close of the State's testimony, because the ownership of the chicken-house was not proven to be in any one other than the defendant. While it is true there was no direct evidence of ownership of the chicken-house in Lee Stewart, as alleged in the information, there was an abundance of evidence that he was in the actual possession of it at the time of the burglary and such evidence sustained the allegation of ownership in him. ''In burglary, ownership means any possession which is rightful as against the burglar.'' [2 Bishop's New Crim. Proc., sec. 137; Henderson's case, 98 Va. 794.]

All of the instructions given by the court of its own motion are criticised by defendant, and claimed to be erroneous for various reasons assigned by his counsel. To this we cannot agree. Taking the instructions as a whole, they presented the case very fairly to the jury, and seem to be free from error.

The court rightly refused the instruction asked by defendant to the effect that there was no evidence of larceny in the case. The evidence adduced by the State tended to prove that defendant not only burglarized the chicken-house, but that he took, stole and carried

away therefrom the chickens and turkey as charged in the information. Nor did the court fail to instruct upon all the propositions of law involved in the case, as contended by defendant. It instructed upon reasonable doubt and the burden of proof. No instruction was necessary as to what is meant by the terms "goods, wares and merchandise" and "other valuable thing kept and deposited," as it must be presumed that any person of sufficient intelligence to serve upon a jury in an ordinary case understands the meaning of terms and phrases in common use, and especially as to what is meant by and what constitutes a valuable thing.

A final contention is that the verdict was for the wrong party, and against the weight of the evidence. The latter assertion seems to indicate that there was some evidence tending to show defendant's guilt. It is unnecessary to say more, in answer to this, than that the weight of the evidence was for the consideration of the jury, and where there is substantial evidence to support the verdict, this court will not interfere. [Culbertson v. Hill, 87 Mo. 553, and subsequent cases.] in the case at bar, however, several strong inculpatory circumstances are established connecting the defendant with the crime charged against him. The facts that defendant sold a number of chickens and a turkey hen, suiting the description of those stolen from Stewart; that he conveyed them to market in a buggy answering the description of the one he had gotten from the livery stable the night before; that he hired it for the pretended purpose of taking a young lady to the country; that when the vehicle was returned to the livery stable, chicken and turkey feathers and fresh chicken litter were found therein, all pointed strongly to defendant's guilt, and in the absence of any sort of explanation from him, established his guilt beyond any doubt. The judgment is affirmed.

All concur.