## THE STATE v. OSCAR HARRISON, Appellant.

**Division Two, February 23, 1915.**

1. **RAPE: Sufficiency of Evidence: Impeachment of Prosecutrix.** The admission of prosecutrix that previously to the alleged ravishment she had lived in a state of adultery with another man tends to weaken her testimony, and justifies the court in scanning it with much care; but where there is strong evidence to corroborate her testimony that she was ravished by defendant and his associates, it will not be held that the evidence was insufficient to support a conviction of rape.

State v. Harrison.

2. ————: **Penetration.** Testimony by prosecutrix that while defendant held her shoulders on a strong table three men had intercourse with her, and that while defendant still held her a fourth had "intercourse" in her rectum, she resisting all the time to the full extent of her ability, makes out a prima-facie case of penetration, in which defendant participated.

3. **JURORS: Prejudice: No Assignment in Motion for New Trial.** If the motion for a new trial does not designate the name of any juror who was ineligible, the alleged error of the trial court in failing to sustain defendant's motion to quash the panel of jurors for that members of the jury acknowledged their prejudice against him, cannot be considered on appeal.

4. **CONSPIRACY: Statements Prior to Crime.** A conspiracy may be shown by acts and circumstances indicating a joint purpose between defendant and another party to aid each other in the commission of a crime. Testimony by prosecutrix that one L. accosted her on the street, inquired if she were a nurse, and being assured that she was stated to her that a certain doctor wanted to see her at once at his office about nursing a patient, and that she went with him to what she supposed was the doctor's office, and that immediately upon her entering into the gambling room into which L. conducted her, defendant and L. made a joint attack upon her and assisted each other in ravishing her, is competent, since it details a series of facts indicating that there was a previously formed conspiracy between defendant and said L. to commit the assault before she was accosted by L. on the street.

5. **RAPE: Evidence of Sodomy: Res Gestae.** Where defendant, charged with rape only, held the prosecutrix on a table by the shoulders while three of his associates had sexual intercourse with her, her testimony that immediately thereafter a fourth had "intercourse" with her through the rectum, is competent. The rule is that if a defendant at the very time and place where he committed an offense for which he is being tried also commits another crime, all the criminal acts committed or participated in by him at that particular time and place may be shown in evidence as a part of the *res gestae*.

6. **ARGUMENT TO JURY: Horrible Ordeal.** Characterizing the experience through which prosecutrix passed as several men ravished her as "that horrible ordeal" is not improper argument.

7. ————: **Corrected by Court.** A prompt direction by the court to the jury to disregard the word "pimp" wrongfully placed by the prosecuting attorney in the mouth of a witness as a characterization of defendant, cured the harm done.

State v. Harrison.

8. ———: **Character of Place.** A statement by the prosecuting attorney that defendant" was seen in a certain hall and "you know who owns it," there being no evidence of its ownership, is outside the record; but in the absence of any evidence that the hall was a place of bad repute, it cannot be held that the remark was reversible error.

9. ———: **Reputation of Room: Screams of Women.** Remarks by the prosecuting attorney to the effect that a certain witness had heard screams of women before in the room into which prosecutrix had been inveigled and there ravished, the purpose being to create the impression that it was a common occurrence for women to be mistreated in defendant's room, if not exactly warranted by the evidence, are cured by the prompt direction of the court to the attorney to stay within the record.

10. ———: **Reputation: Unanswered Question.** Where defendant's character witness testified that defendant's reputation was good, and was then asked on cross-examination if he had heard about defendant's assaulting a certain other woman, to which inquiry there was no reply, it is not competent for the prosecuting attorney to state to the jury that said witness had not heard what the other woman had said; but where the court, as soon as the remark was made, said, "You cannot comment on a question that was not answered," and on motion struck out the remark, there was no reversible error.

11. ———: **Evil Face.** It is prejudicial for the prosecuting attorney to point out the defendant's witness as "this man with his evil face." But a prompt direction by the court to withdraw it, accompanied by a stinging rebuke, was sufficient to impress upon the jury the fact that they could not base a verdict upon the physical appearance of defendant's co-conspirator.

12. ———: **Insufficient Reprimand.** Where improper remarks are made by the prosecuting attorney, and upon proper objection the court does not administer a sufficient rebuke, the defendant should at the time request the court to administer a more pointed one, or should take such other steps as may be appropriate to punish the transgression; and unless he does that, he is not entitled to a new trial, where the court does everything requested.

Appeal from Jackson Criminal Court.—*Hon. Ralph S. Latshaw*, Judge.

AFFIRMED.

*Loyd Martz* for appellant.

(1)   There was a variance between the information, and in the proof, in this, that the information charges rape and there was an absolute failure in the proof of same. State v. Dalton, 106 Mo. 468; State v. Wellman, 253 Mo. 312.   (2)   The court erred in refusing to sustain appellant's motion to quash the panel of jurymen drawn, because members of said panel acknowledged their prejudice and opinion as formed from the reading of newspaper accounts of this alleged transaction.   (3)   Error was committed by the prosecuting attorneys in their argument to the jury which was highly improper and prejudicial to the rights of the defendant and by reason thereof the defendants did not have a fair and impartial trial. State v. Spivey, 191 Mo. 112; State v. Wellman, 253 Mo. 319; State v. Hess, 246 Mo. 160; State v. Baker, 246 Mo. 276; State v. Ulrich, 110 Mo. 350.

*John T. Barker*, Attorney-General, and *W. T. Rutherford*, Assistant Attorney-General, for the State.

(1)   An accessory before the fact may be charged and tried as a principal. Sec 4898, R. S. 1909; State v. Gow, 235 Mo. 323; State v. Rucker, 93 Mo. 88; State v. Schuchman, 133 Mo. 111; State v. Edgen, 181 Mo. 582; Bishop's New Crim. Prac. (2 Ed.), sec. 332; 22 Cyc. 361.   (2)   Everything done or said by the parties to a conspiracy relating to its purposes during its existence is admissible in evidence against all or either of the conspirators, whether said or done in the presence of each or not.   State v. Bobbitt, 228 Mo. 265; State v. Darling, 199 Mo. 201; State v. Copeman, 186 Mo. 120; State v. Pratt, 121 Mo. 572; State v. Walker, 98 Mo. 103.   (3)   Where the prosecuting attorney indulges in improper argument and on objection of defendant the court requests the jury to disregard the remarks and withdraws such remarks from the

consideration of the jury and admonishes the prosecuting attorney to keep within the record, the defendant if not satisfied with the court's action, should ask the court to take further action and failing so to do acquiesces in the action of the court. State v. Wana, 245 Mo. 563; State v. Raftery, 252 Mo. 83. (4) When the prosecuting attorney is rebuked by the court for improper remarks that will ordinarily be sufficient. State v. Dudley, 245 Mo. 188; State v. Terrell, 246 Mo. 333; State v. Kullman, 225 Mo. 632; State v. Barrington, 198 Mo. 91. (5) Aiders and abetters in the perpetration of a rape are guilty as principals. State v. Dowell, 8 L. R. A. 297, and cases cited in notes; State v. Sykes, 191 Mo. 79; State v. Valle, 164 Mo. 551; State v. Orrick, 106 Mo. 119; State v. Duffy, 124 Mo. 9; State v. Gow, 235 Mo. 323. (6) A conspiracy may be shown by either direct and positive evidence or by circumstances from which it may be inferred. State v. Walker, 98 Mo. 95; State v. Sykes, 191 Mo. 78. (7) Declarations and conduct of prosecutrix in a prosecution for rape made or done a few moments after the commission of the offense and while she was still under the influence of the excitement produced by it are admissible as a part of the *res gestae*. McMurrin v. Rigby, 80 Iowa, 322; Hoist v. State, 23 Tex. App. 1; Parker v. State, 67 Mo. 329; McMarth v. State, 55 Ga. 303; People v. Gage, 62 Mich. 271; Lambert v. People, 29 Mich. 71; People v. Brown, 53 Mich. 533; State v. Sykes, 191 Mo. 62. (8) Testimony relating to anything that occurred in the room where prosecutrix was outraged and in the presence of appellant was competent evidence. State v. Corrigan, 262 Mo. 195. (9) In a rape case, proof of penetration need not be in any particular form of words and may be shown by direct or circumstantial evidence. If penetration is the only inference comportable with the evidence, it is sufficient. 33 Cyc. 1486, 1487; Regina v. Bedere, 21 Ont. 191; Tay-

lor v. State, 111 Ind. 279; State v. Enright, 90 Iowa, 522; People v. Bernor, 115 Mich. 692; People v. Scouten, 130 Mich. 620; State v. Hodges, 61 N. C. 231; State v. Sykes, 191 Mo. 69; State v. Miller, 191 Mo. 594.

BROWN, J.—Vic Gueringer, Thomas Kinevan, Leo Brennan and defendant were jointly charged with the crime of rape upon one Gertrude Shidler, in Kansas City, Missouri, on March 9, 1914. A severance was granted and defendant was separately tried and convicted in the criminal court of Jackson county. He appeals from a judgment fixing his punishment at twenty-four years' imprisonment in the penitentiary.

The defendant in his prief relies for reversal upon the following alleged errors: (1) Insufficient evidence to sustain the conviction; (2) refusal of the trial court to quash the panel of petit jurors impaneled to try defendant; (3) rejection of proper evidence offered by defendant; (4) admission of improper evidence on the part of the State; and (5) improper remarks of the prosecuting attorney. These assignments will be considered in connection with the conclusions we have reached.

The evidence in substance is as follows:

The crime was committed (if committed) in a room of the second floor of a two-story building at 1224 Grand avenue in Kansas City. Said room was supplied with a strong table, a lounge and several chairs. Some of the witnesses speak of this room as a "club room." One witness for defendant says he went there to gamble. Playing cards and poker chips were scattered around the room, and, under a fair inference, it may be classified as a gambling room.

Adjoining or adjacent to this gambling room were one or two bedrooms and a room which had the appearance of a kitchen. Defendant admitted to a policeman that he lived at this place, but there is some evidence that a man named Morgan was the proprietor

thereof. The entrance to the second story of this building is an ordinary stairway. At the landing of the stairway is a door which opens into a hallway about seventy feet long. This hallway is lighted by a window in the rear end thereof, and from the front door, which is partly glass. The gambling room is lighted by a skylight and can be entered by a door in the hallway or through the door of another room.

The testimony of prosecutrix runs as follows: She is twenty-eight years old; by occupation a nurse, and for several months prior to March 9, 1914, she had been following that line of work. She had frequently appeared upon the streets of Kansas City dressed as a nurse. In that garb she had, some months prior to the day of the alleged assault, attended a picture show operated by one Gueringer, who is a co-indictee of defendant in this cause, though it does not appear that any of the defendants had any personal acquaintance with prosecutrix before the day of the assault. She further testified that about 5:15 p. m. on March 9, 1914, she visited the office of one Doctor Tucker to procure treatment for a threatened attack of pneumonia. On leaving Dr. Tucker's office she was accosted upon the street by one Maurice Lewkowitz, who asked her if she was a nurse. She replied that she was, whereupon Lewkowitz told her that Doctor Schwartz at 1224 Grand avenue wanted to see her at once about nursing one of his patients. At Lewkowitz's suggestion she went with him to 1224 Grand avenue. When they had reached the second floor of that building Lewowitz told her to go into a room in said building which was uncarpeted and almost barren of furniture. She remarked to Lewkowitz that it did not appear to be a doctor's office, whereupon he requested her to step into the next room. When they entered that room Lewkowitz told her that he was Doctor Schwartz and solicited her to have sexual inter-

course with him. She refused his request, and tried to leave the room, but found the door through which she had entered closed and locked. She states that Lewkowitz then went into another room, or out into the hallway, and almost immediately returned with defendant, Vic Gueringer and two or three other men. When these men entered she screamed for help and Gueringer told her that he was an officer; thereupon she ran to Gueringer for protection and he caught hold of her and pulled her down across a table. One of the men brought in a rope and spoke about tieing prosecutrix, but another man present said that there were enough of them to hold her without using a rope. After pulling her down across the table defendant Harrison held her shoulders while three of his associates had "intercourse" with her, and Gueringer then had "intercourse" with her through the rectum, causing her great pain. After thus committing sodomy upon her said Gueringer came around the table, and, threatening to kill her with a pistol if she further resisted, placed his sexual organ in her mouth. At this point prosecutrix lost consciousness and does not know what transpired until someone threw water on her face. Upon regaining consciousness she did not see anyone, but heard some men cursing. She discovered that the door leading to the hallway had been left unlocked and she ran out into the hallway where she saw some men towards the front door. She then ran back to the window at the rear of the hallway and jumped out onto the roof of another building. While on said roof defendant came out there and took hold of her sleeve and tried to pull her back into the building where she had been mistreated. She jerked loose from him and remained on the roof until rescued by a policeman. One of her sleeves was torn.

Prosecutrix further testified that while she was being mistreated in the gambling room she cried,

screamed and did everything in her power to escape from defendant and his associates. All the evidence is to the effect that after going out on the roof she screamed very loudly and appeared to be greatly excited and frightened. A woman who was working in a store beneath the gambling room testified that she heard a woman scream twice overhead, and a few seconds later saw prosecutrix out on the roof calling for help.

A crowd soon gathered in the alley near the building upon which prosecutrix was standing.

One Fred McNulty, who was in the alley, testified that he saw defendant come out on the roof and take hold of prosecutrix, and heard him say to her, "Come in here, you silly s— o— b—;" that she jerked away from defendant and continued to scream for help. McNulty testified that this occurred about the hour of six p. m., and that it was real light and he recognized the defendant, having seen him before in the "Green Duck" pool hall.

Charles Kearns, who was in a building across the alley from where prosecutrix appeared on the roof, testified that he saw defendant come out on the roof and take hold of prosecutrix; that he hallooed at defendant to turn her loose, and he did so and went back into the building where the alleged crime was committed. Kearns also testified that prosecutrix was greatly excited; that she threw her hat, coat and pocketbook down into the alley and seemed to be preparing to jump from the roof, when someone warned her not to jump.

About 6:15 p. m. two policemen arrived and one of them took prosecutrix from the roof. She immediately made complaint to the policeman that she had been ravished, but he failed to find defendant or any of his associates in the building where the alleged crime was committed. After being rescued from the roof prosecutrix was immediately taken to a police station and

State v. Harrison.

from there to a hospital, where two physicians made a physical examination of her. Said physicians testified that when brought to the hospital her rectum was bleeding from two lacerations, each about an inch in length.

Prosecutrix identified defendant most positively as the man who held her shoulders on the table while Gueringer and others were mistreating her.

The policeman who examined the gambling room a short time after the alleged assault stated that he found a stove and two chairs overturned; that the cloth on the table was wet and "wrinkled up." He further noticed that water had been spilled on the floor of said room where the aforesaid table stood.

Three witnesses who saw prosecutrix on the roof testified that they did not see defendant touch her. It does not clearly appear that prosecutrix was in view of these witnesses all the time she was on the roof.

A woman who picked up the pocketbook which prosecutrix threw into the alley testified that it contained only sixty-five cents.

Defendant was arrested near 12th street and Grand avenue about nine p. m. on the day of the alleged assault. When first taken into custody he stated to the officer that he had been attending a picture show at 12th and Troost and did not live at 1224 Grand avenue. After being reminded by the arresting officer that the latter had seen him at 1224 Grand avenue defendant admitted that he lived there.

On cross-examination prosecutrix testified that she had resided in Kansas City about two years. Prior to that date she lived in Terre Haute, Indiana, where she was twice married to one Clyde Shidler, and twice divorced from him. Three children were born of these marriages, which children at the time of the trial of this case were living with their father in Indiana. When she first came to Kansas City prosecutrix brought two of her children with her. She admitted that she lived in a state of adultery for several months

with a young man by the name of Raymond Ausherman, with whom she became acquainted while nursing his grandmother in Indiana. She further testified that while living on a farm in Indiana she was ravished by her father-in-law, a minister of the gospel. That said assault caused her to miscarry, but she did not prefer any criminal charge against her father-in-law. That at the instance of her father she collected $400 from her father-in-law in settlement of her injuries.

Raymond Ausherman, with whom prosecutrix lived in adultery, was serving a jail sentence for vagrancy at the time of the trial. He testified that prosecutrix left him because she became enamored of one Charles Farina. Farina testified that he had had no improper relations with prosecutrix. Defendant introduced several other witnesses who testified to other specific acts of immorality on the part of prosecutrix after she came to Kansas City. While admitting her illicit relations with Ausherman she denied all other immoral conduct charged against her. The evidence of additional immoral acts on the part of prosecutrix was direct, but we are not able to say that it was very convincing. There was some evidence that for several months immediately prior to the alleged assault upon prosecutrix she had been working as a nurse and living a moral life.

Maurice Lewkowitz was sworn on behalf of defendant and testified that prosecutrix flirted with him on the street and solicited sexual intercourse; that, after borrowing two dollars from a friend who stood nearby, he took her to the gambling room at 1224 Grand avenue, and there had sexual intercourse with her upon a lounge. That he placed two dollars on a table by her side and then left the building for fear he might be arrested. This witness admitted that he left the State soon after March 9, 1914, and was arrested in Omaha, Nebraska. He stated that he fled the State because the newspapers had inflamed the

minds of the people against him, and several persons had told him that he would be lynched if caught. He returned to Missouri without requisition.

One J. King Forrest, a sign painter who was working in his paintshop in a room adjoining the one where prosecutrix claims to have been assaulted, testified that there was a small opening in the sliding doors between his room and the gambling room. That he did not hear prosecutrix scream, and did not know that there was any trouble until a policeman knocked at the front hall or door and asked how to get out on the roof in the rear of the building. The door at the front of the hall was locked and Forrest admitted the policeman. On the morning after the alleged assault witness Forrest told a policeman that the place seemed to be going from "bad to worse." Asked why he did not go into the gambling room and protect prosecutrix against her assailants when she screamed, he replied: "Would you go back there with that gang of men back there." In his testimony at the trial Forrest denied making this statement to the policeman.

Defendant testifying in his own behalf stated that he went to 1224 Grand avenue alone about 5:30 p. m. on March 9, 1914; that he saw prosecutrix sitting in one of the bedrooms, but did not molest her at anytime, and that she never screamed until she went out on the roof. He admitted that he went out on the roof and spoke to her, but denied that he took hold of her arm.

John A. Cunningham testified that he employed defendant in his plumbing establishment during the three years next prior to November, 1913; and that defendant made him a good hand. However, witness did not know what defendant's reputation was outside of his place of business. Said witness did not know that defendant lived in a gambling room and had not heard of any misconduct on his part.

One witness from Indiana testified that she knew prosecutrix when she lived at Terre Haute, and that her reputation for veracity and morality was bad. Two witnesses from Kansas City also testified that the reputation of prosecutrix in that city was bad.

In rebuttal three witnesses who resided in Terre Haute, Indiana, one of them a physician who had loaned a small sum of money to prosecutrix when she first came to Missouri, testified that they knew prosecutrix quite well at Terre Haute, and that her reputation in that city for veracity and chastity was good. Other items of evidence are not of sufficient importance to warrant special mention here.

I. Defendant's insistence that the evidence is insufficient to support the conviction called for the foregoing extended synopsis of the testimony.

The admission of the prosecutrix that she had lived in a state of adultery tends to weaken her evidence, and justifies us in scanning her

**Sufficiency of Evidence.** testimony with much care. The further fact that prosecutrix admits that she went to the second story of a rather poorly lighted building with a stranger, and into a room which she says did not have the appearance of a doctor's office, tends to corroborate defendant's witness Lewkowitz, who testified that she went there for immoral purposes. A further cloud is cast upon the evidence of prosecutrix by a State's witness who was working on the first floor of the building beneath the gambling room. This witness testified that she heard only two screams before prosecutrix ran out onto the roof. This evidence conflicts with the statement of prosecutrix that she screamed all the time she was being mistreated.

If there was no corroboration of the alleged ravishment of prosecutrix except her testimony and her screams after she went out onto the roof, we would

feel inclined to reverse the judgment and remand the cause upon the ground that the evidence of defendant's guilt was not satisfactorily established. [State v. Tevis, 234 Mo. l. c. 284; State v. Donnington, 246 Mo. l. c. 355-6; State v. Brown, 209 Mo. 413.] Her screams while on the roof might have been feigned.

However, there is strong evidence to corroborate the testimony of prosecutrix that she was ravished and mistreated by defendant and his associates. Two physicians who examined her very soon after the alleged assault found her rectum bleeding from recent lacerations. The extreme improbability that these lacerations were self-inflicted, or that they were caused in any other manner than as testified to by prosecutrix, is strong corroboration of her version of the alleged crime. The further fact that immediately after the assault two chairs and a stove were found overturned in the gambling room indicates a struggle. The torn condition of her sleeve, the water on the table and on the floor at the place where she claims water was thrown upon her after she had lost consciousness, lends further corroboration to her narration of the crime.

The act of defendant in coming out on the roof and trying to get her to go back into the gambling room points to his participation in the assault. Also the further fact that prosecutrix had only sixty-five cents immediately following the assault discredits the evidence of witness Lewkowitz that she went to the gambling room for immoral purposes and received two dollars from him.

II. Another insistence of defendant is that the judgment should be reversed on the ground that there is no evidence of penetration, citing State v. Dalton, 106 Mo. 463, and State v. Wellman, 253 Mo. l. c. 312. The Dalton case was reversed because the prosecutrix did not testify that the defendant in that case touched her sexual organ with

Penetration.

his sexual organ—the plain inference from her evidence being that he did not. The Wellman case gives the legal definition of the words "sexual intercourse." It is not a rape case; so that neither of those cases sustain defendant's contention.

In this case prosecutrix testified that while defendant Harrison held her shoulders on the table three men had "intercourse" with her, and that while defendant still held her Gueringer had "intercourse" in her rectum, she resisting all the time to the full extent of her power.

We find that this evidence makes out a prima-facie case of penetration in which defendant participated. The word "intercourse" has many definitions according to the variant circumstances in which it is used. One of those definitions is "sexual connection— coition." [Webster's New International Dictionary.] The facts detailed by prosecutrix in connection with her use of the word "intercourse" in her evidence in this cause gives it the same meaning as coition or sexual intercourse brought about by force and against her will. The usual disinclination of witnesses when summoned into court to use language of a vulgar import in describing the revolting acts constituting the crime of rape render it difficult in some cases to secure evidence which in categorical language describes the act of penetration. It is not necessary that the evidence of witnesses should be as specific as the language used in an indictment. The act of penetration may be inferred by the jury when the evidence is clear enough to admit of no other conclusion. So that, viewing the evidence in this cause from every angle which defendant's counsel has seen fit to challenge it, we find that a substantial prima-facie case was made for the triers of the fact. Therefore, defendant's first assignment must be overruled.

III.  The assignment ''that the trial court erred in failing to sustain defendant's motion to quash the

**Jury.** panel of jurors drawn, because members of the jury acknowledged their prejudice against defendant,'' cannot be considered here, because not properly lodged in the motion for new trial.  The motion for new trial does not designate the name of any juror who was ineligible to serve; therefore, this point is not well taken.  [State v. Tomasitz, 144 Mo. l. c. 91, cited with approval in State v. Shelton, 223 Mo. l. c. 131.]

IV.  It is urged that proper and competent evidence offered by defendant was rejected by the court.

**Rejected Evidence** We fail to find anything in the record to sustain this assignment, and it must be disregarded.

V.  It is contended that the trial court committed reversible error in admitting certain statements al-

**Admissions of Co-indictee.** leged to have been made by witness Lewkowitz to prosecutrix regarding the alleged desire of Doctor Schwartz to secure her services as a nurse, the defendant not being present when those statements were made.

The rule of law in this State is that a conspiracy may be shown by acts and circumstances indicating a joint purpose between defendant and another party to aid each other in the commission of a crime.  The fact that the defendant and witness Lewkowitz made a joint attack upon prosecutrix immediately upon her entry into the gambling room—an attack which probably would not have been successful if attempted by defendant alone—is a very strong circumstance indicating that there was a conspiracy between defendant and Lewkowitz to commit the assault before Lewkowitz accosted prosecutrix on the street; consequently, what-

263Mo42

ever Lewkowitz said to prosecutrix to induce her to go to the gambling room was admissible against defendant, though he was not present when such statements were made. [State v. Fields, 234 Mo. 615, l. c. 623; State v. Roberts, 201 Mo. 702, l. c. 728.]

VI. Defendant asserts that it was error to admit evidence that Gueringer committed sodomy upon prosecutrix while defendant was holding her, such evidence being in relation to a crime not designated in the information. It is quite true that our Constitution requires that a defendant shall be notified of the nature and character of the charge which he is required to meet. [Sec. 22, art. 2, Constitution of Missouri.] However, it is the law of this State that, if a defendant at the very time and place where he commits an offense for which he is being tried has also committed another crime, all of the criminal acts committed or participated in by him at that particular time and place may be shown as a part of the *res gestae*. In the case of State v. Rasco, 239 Mo. 535, it was ruled competent for the State to introduce proof of three other murders committed by defendant at the time he killed the man for whose murder he was then on trial.

It is usually permissible for a defendant to prove mitigating circumstances which tend to show the absence of malice or other wicked motive in the commission of the crime. It has even been held that a felony cannot be committed where it is clear that the party accused had no design to violate the law. [State v. White, 237 Mo. 208, l. c. 212.]

As a corollary of this doctrine it is proper to show all the acts done or words spoken by a defendant at the time of committing an offense, so that the jury may know the animus which inspired the act charged, and thereby be the better qualified to "make the punishment fit the crime."

VII.   This brings us to the defendant's last assignment, that the prosecuting attorney, Mr. Jacobs, and his assistant, Mr. Curtin, made the following alleged improper arguments to the jury.

*Remarks of Prosecutors.*

"Mr. Curtin (assistant prosecuting attorney): Did she make that story up; is that a lie; would that woman make that story up to manufacture that horrible ordeal?

"Mr. Martz (attorney for defendant): We object to that statement, 'that horrible ordeal.'

"Which was by the court overruled and duly excepted to by defendant's counsel, to which remark defendant's counsel objected, which objection was overruled by the court and duly excepted to by defendant's counsel."

This was not improper argument. If prosecutrix was subjected to the mistreatment she described in her evidence, it was in fact a "horrible ordeal," and the assistant prosecutor had a right to so characterize it in his argument.

"Mr. Curtin (continuing): Kearns was over in the window looking out. He saw this man go over and grab hold of her sleeve. Kearns said, 'Leave that woman alone, you pimp.'

"Mr. Martz: We object.

"The Court: That expression was not used and it is withdrawn from the jury.

"Mr. Curtin: I thought it was.

"The Court: The prosecuting attorney is requested to keep within the record, and the jury is instructed to disregard the statement.

"To which remarks the attorney for defendant duly objected and excepted."

The evidence of Kearns was that defendant came out on the roof, seized prosecutrix by the sleeve and tried to pull her back into the gambling room, where she says he had been raped. Kearns stated that he

hallooed at defendant to let prosecutrix alone, but did not say that he called him a "pimp." The last word of the remark was, therefore, outside of the record, but was harmless in view of the prompt action of the court in directing the jury to disregard it.

"Mr. Curtin (continuing): McNulty said that he had seen the defendant before; that he had seen him in the Green Duck Pool Hall before; that Green Duck Pool Hall, you know who owns it. He saw him in there and he knew him after he had seen him several times.

"Mr. Martz: I object to reference of the prosecuting attorney to the Green Duck Pool Hall and who owns it.

"The Court: There is no evidence as to who owns and the remarks are improper. Keep within the record, Mr. Curtin.

"To which remarks the defendant's counsel duly objected and excepted."

It was error for the prosecutor to refer to the ownership of the "Green Duck" pool hall, there being no evidence in the record as to the ownership of said place. However, in the absence of any showing that said hall was a place of bad repute, we cannot say that the remark was reversible error.

"Mr. Curtin (continuing): Screams of a woman will draw the attention of a man if he has a drop of blood in his veins. It will bring any man to the assistance of a woman, but King did not come. Had he heard it before? Was it an ordinary occurrence with King?

"Mr. Martz: We object to that statement of the prosecuting attorney.

"The Court: Sustained. There was no evidence of other screams there and the prosecuting attorney is instructed to stay within the record.

"To which remarks the defendant's attorney at the time duly objected and saved his exceptions."

The last quoted remark was an effort to create
the impression that it was a common occurrence for
women to be mistreated in defendant's rooms. It was
not exactly warranted by any evidence in the case, but
in view of the court's prompt action in telling the jury
that there was no such evidence, and in admonishing
Mr. Curtin to keep within the record, we think this re-
mark became harmless.

"Mr. Curtin (continuing): Oh, one man said his
reputation was good. He had not heard them say what
Rose Herson said.

"The Court: You cannot comment on a question
that was not answered.

"Mr. Martz: We ask that it be stricken from the
record.

"The Court: Stricken out.

"At which time the defendant's attorney duly ex-
cepted."

The assistant prosecuting attorney was certainly
heading straight toward reversible error in making the
remark last quoted. Rose Herson did not testify and
there was no evidence before the jury that she knew
anything derogatory to the reputation of defendant.
The only time that Rose Herson's name was mentioned
in the entire record was when the prosecuting attorney
asked defendant's character witness Cunningham if he
had heard about defendant assaulting her, which ques-
tion did not elicit any information as to that alleged
assault. However, considering the prompt action of
the trial court in striking this unwarranted remark
from the record upon defendant's request, and stop-
ping further argument of that character, we think the
remark was not sufficiently prejudicial under the facts
of this case to constitute reversible error.

"Mr. Jacobs (prosecuting attorney): I say to you
fathers, and you husbands here, conceive if you can
the condition of that woman's mind when she saw them

walking in, filing in the room, Gueringer, this man (indicating) with his evil face.

"Mr. Martz:    We object to that remark.

"The Court:    You must withdraw that remark. That remark is improper; you have no right to refer to this man's face as being evil.    The Supreme Court in Oscar Ulrich case, when Henry Withers was the prosecuting attorney, referring to the defendant as a surgar-loaf-headed Dutchman, or words to that effect, held it was error.    This man's face is just as good as yours or mine.

"To which defendant's attorney saved an exception and duly excepted."

The last-quoted remark was, of course, prejudicial to defendant.    It would be intolerable to have convictions based upon the mere fact that one of defendant's associates was possessed of an "evil face."    However, the prompt and stinging rebuke which the court administered to Mr. Jacobs was sufficient to impress upon the jury the fact that they could not predicate a verdict upon the physical appearance of defendant's co-indictee.

A few additional remarks were objected to by defendant but we find them not of sufficient moment to warrant mention in this opinion.

It will readily be observed that the trial court was entirely fair to defendant during the argument and protected him of his own volition when the prosecuting attorney attempted to go beyond the bound of legitimate argument.    It also appears from a perusal of nearly a thousand pages of record that said court maintained the same spirit of impartiality throughout the trial.

It has been the rule of this court for more than ten years that where improper remarks are made by a prosecutor, and upon proper objection the court does not administer a sufficient rebuke, the defendant should at the time request the court to administer a more

pointed reprimand, or take such other steps as may be appropriate to punish the transgression. [State v. McMullin, 170 Mo. 608; State v. Phillips, 233 Mo. 299; State v. Wana, 245 Mo. 1. c. 562-3; State v. Raftery, 252 Mo. 1. c. 83.]

It will be seen that the trial court did everything which the defendant, in his efforts to confine the prosecutors within the bounds of legitimate argument, requested; and defendant having failed at the time the improper remarks were made to ask for a more pointed reprimand, or to except to the action of the trial court in omitting to take more vigorous action to prevent improper argument, was, under the facts of this case, not entitled to a new trial. Cases sometimes arise where courts directly sanction improper arguments and refuse to consider objections to such arguments when made in a timely manner. In such cases the rule just announced would not be applicable.

The defendant received a rather long sentence, but if guilty it is not too severe. Under the evidence of this case his guilt was a proper issue for the jury. The prosecuting attorney and his able assistant made very ingenious and eloquent appeals to the jury, and may thereby have added several years to defendant's sentence. However, except as hereinbefore noted, the arguments of the prosecutors were entirely legitimate. The record containing no reversible error, the judgment will be affirmed. It is so ordered.

*Faris, P. J.,* and *Walker, J.,* concur.