THE STATE v. C. D. WARD, Appellant.—85 S. W. (2d) 1.

Division Two, July 11, 1935.

*John A. McAnally* and *George Smith* for appellant.

*Roy McKittrick*, Attorney General, and *Frank W. Hayes*, Assistant Attorney General, for respondent.

LEEDY, J.—By information filed in the Circuit Court of Dunklin County, numbered 18130, appellant was charged with rape, and upon his trial, was convicted. The death penalty was imposed by the court upon the failure of the jury to agree as to punishment. Appellant has appealed, but has filed no brief. As no question arises as to the sufficiency of the evidence to sustain the verdict, a brief outline thereof will suffice. The brief of the Attorney General fairly states the facts, which we adopt, in part, as follows:

"Emma S——, 27 years of age, and her sister, Frances S——, had been to church at Malden, Dunklin County, Missouri, in the evening of the 28th day of May, 1933. The church was located on Highway No. 25 about a block south of the Cotton Belt depot in the south part of Malden. They left the church about 10 o'clock that evening in company with some young people by the name of Easterline, who accompanied the S—— girls until they came to the corner of the bakery, one block north of the Cotton Belt depot, where the Easterline people turned east to go home and the S—— girls con-

tinued north up the main street of the town. They continued in a northerly direction and when they reached a point about a quarter of a mile beyond the city limits, some person from the rear 'accosted them and told them to stop and stick up their hands. They recognized the voice as a man's voice and they stopped and turned around, and the man, who was a negro, ordered them to come with him out into the cotton field. The girls begged him not to make them go with him and stated they did not have any money, but the man replied that it was not money he was after and threatened to shoot them unless they obeyed. He had his right hand in the front of his shirt and had a sweater over his left arm. He took hold of the wrist of Emma S——, who begged and pleaded to be let alone, but the appellant ordered them to go with him or he would shoot them. He compelled them to cross the ditch at the side of the road and go into the Reyburn cotton field. All the time the girls were pleading to be left alone and the appellant was threatening to shoot them.

"He ordered Emma S—— to lie down, which she did after much protest and after the appellant appeared to be about to strike her. At that time the appellant had a knife in his hand. He forced Frances S——, the sister, to lie down beside Emma S——, and then the appellant got down on his knees and tore off the bloomers of Emma S——, then forcibly and against the will of Emma S—— had sexual intercourse with her. The appellant then had sexual intercourse with Frances S——, forcibly and against her will, whom he had compelled to lie down beside Emma S——, and against whose throat he had held a knife while the first act of intercourse was being committed upon Emma S——. After he had attacked Frances S——, he returned to Emma S—— and committed the second rape upon her.

"After the second act of rape upon Emma S——, the appellant permitted the girls to arise and they started out of the field. The appellant made the girls go with him until they arrived at the fence encircling the field where he picked up his sweater (after compelling the girls to kiss him good-night) permitted the girls to go their way and slipped away.

"The girls immediately went home, undressed and cleaned their clothes, which had been soiled, and then immediately notified their father and mother. Dr. S. E. Mitchell was called and cared for the girls over a period of time and treated them for bruises and lacerations resulting from the rape. The appellant was apprehended in Helena, Arkansas, and was identified by Emma S—— as being the person who attacked her. At the same time he also was identified by Frances S—— as the person who attacked her.

"While the appellant was in custody of the law at Helena, Arkansas, on September 29, 1933, he executed a written confession in

which he traced his movements which led him to Malden, and in which he detailed his actions while in Malden, and admitted that he raped two white girls on the 28th of May, 1933. The appellant's confession as to what transpired in connection with the rape is identical with the testimony of the two S—— girls. The appellant also admitted to Sam Ward, who was in jail at the same time as was the appellant, that he had raped two white girls at Malden. The appellant also admitted to Wardell McDonald, who was with appellant in Malden at the time the attack occurred, that he had raped two white girls. This admission by the appellant to McDonald occurred immediately after the appellant had returned from the scene of his crime to the station for the purpose of catching a freight train, and when he and McDonald bummed their way out of town together.

"The appellant, in his defense, denied the raping of the S—— girls and claimed that the confession which was signed by him and introduced in evidence had been obtained from him by force and by promises. The officers, however, in charge of the jail at the time testified that the confession was executed voluntarily and that no violence, threats or promises had been used in obtaining it."

Appellant stoutly denied his guilt. He testified he and McDonald left a caboose in which they had been sleeping a little after dark; that they then parted company, and did not see each other again until five or ten minutes before leaving Malden on a freight train about midnight; that he and a colored boy named "Black Snake" went to a filling station where they remained until nine-thirty or ten o'clock, and he, appellant, then returned to the railroad station where he remained until McDonald came back, and they immediately thereafter left on a freight. Appellant further testified that in St. Louis the next day McDonald told him that he, McDonald, had raped two white girls in Malden the night before. A plea of former conviction was also interposed, which was heard with the case on the merits. By the plea it was averred that appellant had theretofore, and at the same term of said court, been duly convicted for the identical offense charged in the information in the instant case. In the case at bar, appellant was tried for the first rape upon Emma S——. The evidence disclosed that appellant had been tried about ten days previously for the second rape upon Emma S——, in case No. 18129. Other pertinent facts will be stated in the course of the opinion in connection with the points to which they relate. The motion for new trial contains twenty-one separately numbered paragraphs, assigning as many alleged errors. As some of the assignments raise substantially the same points, they will be grouped and discussed together.

I. The first two grounds, that "the verdict is against the law and against the evidence and against the law under the evidence," and "the verdict of the jury is the result of bias, prejudice and passion" may be disregarded, as under the statute, they preserve nothing for review.

II. Appellant's application for a continuance was overruled, and this action is urged as prejudicially erroneous. The motion was based on the absence of alleged material witnesses, one of whom, it affirmatively appears, being a nonresident of the State, and the other not under subpoena. In the absence of a showing of an abuse of discretion on the part of the trial court, we are not willing to disturb its ruling on a matter of this kind, and no such showing is here made.

III. Complaint is made that Instruction No. 1 is "in conflict with Instruction No. 3, in that the court tells the jury in Instruction No. 1 that defendant pleads not guilty to the charge for which he is on trial and also pleads a former conviction, and Instruction No. 3 tells the jury that as a matter of law defendant has not been formerly convicted."

The court gave Instruction No. 1, which reads as follows: "The court instructs you that the defendant is charged in the information and is on trial in this case for the first alleged rape, if any, upon one Emma S——, at the time and place mentioned in the information and as set forth and mentioned in the testimony, and defendant pleads not guilty and a former conviction; and you will find him guilty or not guilty in this case solely upon your determination of the testimony relative to the commission, if any, of such alleged first rape, if any, and the effect of such former conviction, if any, as to the first act of rape, if any, upon said Emma S——, above mentioned, under this and other instructions in this case."

The following is the concluding paragraph of Instruction No. 3: "Therefore, you are instructed as a matter of law that the defendant has not been previously convicted for the identical offense, to-wit: the first rape, if any, for which he is now in this case on his trial, and that such alleged plea constitutes no bar whatsoever to this prosecution for such alleged first act of rape, if any, upon Emma S——, and you are further instructed and charged that in determining the guilt or innocence of defendant in this case you will exclude from your consideration all such evidence relating to defendant's claim of alleged former conviction and totally disregard all of it, other than to affect his credibility as a witness in this case."

We think Instruction No. 1 did not submit the issue of former conviction for determination as a question of fact, but insofar as it re-

lated to the effect of such plea, it merely told the jury it would be guided by that instruction *"and other instructions in the case."* It was as proper to inform the jury that the plea of former conviction had been interposed as that defendant also pleaded not guilty. The effect of the plea was determined by the court as a matter of law, and by Instruction No. 3 the jury was so told. When read and taken together we are of the opinion that there was no such conflict as would confuse or mislead the jury, or prejudicially affect appellant.

IV. The motion next assigns error in the giving of Instruction No. 2, which limited the effect of the evidence touching the other acts of rape shown to have been committed by defendant during the time the two girls were detained by him. It told the jury that while such evidence was admissible because forming "a part of the facts and circumstances of such alleged first rape, if any, and may be considered by the jury, if you find they were in fact committed, as any other testimony in the case, *except* upon the question as to whether such first alleged rape, if any, was in fact committed by defendant upon the said Emma S—— at the time and place, and under the circumstances set forth in the other instructions given herein." (Emphasis ours.)

Being admissible as a part of the *res gestae* (as we hold in another paragraph hereof), and "for this reason, and since it fell naturally into the facts, no instruction as to its evidentiary weight or purpose was required to be given. If it had not been a part of the *res gestae,* its admission would have been error in this sort of case which no instruction could have cured, present proper preservation of the point." [State v. Pfeifer, 267 Mo. 23, 183 S. W. 337.] As the instruction was in appellant's favor, and something to which he was not entitled, he is in no position to complain, and his contention is, therefore, overruled.

V. Instruction No. 3 is challenged as improper because a comment on the evidence, and as confusing and misleading, and because it invades the province of the jury in that "it declares as a matter of law a question of fact," namely, whether or not defendant had been formerly convicted for the same offense. The instruction is as follows:

"The court instructs the jury that one of the defenses sought to be interposed on behalf of the defendant is the plea of former conviction; that is, that he claims that he has been previously convicted in case No. 18129 for the identical act of rape upon Emma S—— for which he is now on trial. The jury is instructed that to sustain the plea of former conviction as a defense and bar to this prosecu-

tion, the defendant must show that he had been previously convicted for the identical offense for which he is now on trial in this case, to-wit: Case No. 18130. You will observe that there are two distinct complete rapes, if any, upon Emma S——— on the same day and at the same place, if any, mentioned in testimony; and the court instructs you that each of the said rapes, if proved, upon said Emma S———, constitutes a distinct offense, for each of which said offenses the defendant (if it was he who did in fact commit same) is subject to prosecution and punishment.

"And in this connection the court instructs you that it is conceded in this case that the defendant was convicted in this court on November 17th, 1933, in case No. 18129, under an information and upon testimony and from the same witnesses substantially the same as the information, witnesses and testimony offered and given in this case, that under the record, record entries and the proceedings therein together with the election of the State made during trial on reception of testimony therein to prosecute for the second alleged act of rape, if any, and the instructions of the court herein excluding all other alleged acts of rape, if any, if determining guilt and innocence from the consideration of the jury in that case, mentioned in testimony, such former trial and conviction of defendant in case No. 18129 was for the second alleged rape, if any, of the said Emma S———, and at the time and place, if any, mentioned in the testimony, and that such conviction was, as a matter of law, for another and a different act of rape, if any, as set forth, defined and limited in these instructions herein for which he is now in this case on trial, to-wit: The first rape, if any, mentioned in testimony, upon said Emma S———." Then follows the concluding paragraph which has been set out in paragraph III above.

Under the objections raised, as hereinabove detailed, we may pass over the question of whether it is proper to inform the jury, as this instruction does, how the court arrived at its conclusion that, as a matter of law, the plea of former conviction was not good. There is nothing in the point that the instruction is a comment on the evidence because the instruction submits nothing for the jury's determination. Nor do we think it confusing or meaningless. Going to the ultimate question as to whether it was proper to determine the effect of the plea as a matter of law, under the evidence submitted, and to instruct the jury accordingly, we are of the opinion that such action was proper, and accords with settled practice. In State v. Toombs, 326 Mo. 98, 34 S. W. (2d) 61 (following State v. Keating, 223 Mo. 86, 122 S. W. 699), it was held, under a similar state of facts, "Since the whole record (of the former conviction) was thus before the court its legal effect was a question for the court . . . . to determine." In support of the plea it was shown

by parol, and without objection, that the evidence in the two cases (Nos. 18129 and 18130) was substantially the same. The record and files in the former case were introduced, including the information, instructions and verdict. It was also shown defendant had filed no motion for a new trial, and that the statutory period therefor had lapsed. The State introduced the instructions in the former case, which expressly limited that trial to the second alleged rape of Emma S——. In the light of that showing, we hold the court properly construed the record in declaring its legal effect.

What has been said above disposes of the other grounds of the motion assigning error in refusing instructions 14d and 15d, asked by defendant, both of which submitted, as a question of fact, the previous conviction of defendant.

It is further contended that even though it was proper for the court to direct a verdict against defendant as to his plea of prior conviction, yet the jury did not, by direction of the court, or otherwise, pass on that issue or return a verdict, and, therefore, said plea of former conviction is still pending, and the court erred in not disposing of the whole question before discharging the jury. As hereinabove pointed out, the plea was tried with the case on its merits, and we think appellant's position not tenable because the court, by giving Instruction No. 3, declaring the effect of such plea as a matter of law, necessarily disposed of the issue raised thereby, and did it as effectively as if a formal entry of record had been made overruling the plea.

VI. Appellant asserts it was improper for the court to give Instruction No. 15, which told the jury that if they had agreed upon the guilt of the defendant, but were unable to agree upon the punishment, that they might return a verdict of guilty without assessing the punishment, and providing a form therefor; that it was error to receive such a verdict, and for the court to fix the punishment. The record discloses that after the jury had been deliberating at least nine hours, they reported they were unable to agree upon a verdict. Whereupon, the prosecuting attorney requested the court to "inquire of the jury whether they have agreed on the innocence or guilt of the defendant." To which the court replied, "The court doesn't like to make that inquiry in a case of this nature. If the jury has any inquiry they want to make, or any report they want to make, it is their privilege to do so, but the court wouldn't want to. He wouldn't want to invite or solicit it in that sense of the word." The following then occurred: "A JUROR: Your Honor, we are divided and it seems like we are hopelessly divided, and that there is no chance for agreement. The COURT: Gentlemen, you have heard the statement. Do any of you gentlemen for the defendant

wish to inquire about the amount of the division, or the cause of their disagreement? By Judge McANALLY (counsel for defendant): Well, just through curiosity more than anything else, I would like to know if they have agreed on the guilt or innocence. By the COURT: Well, you may answer that. By a JUROR: We are agreed on the guilt. The division is on the penalty or punishment. . . . By a JUROR: Do you mean that we can return a verdict of guilty, and not assess the punishment? Can we, as a jury, bring in a verdict of guilty without assessing the punishment? By the COURT: Well, you may when the court gives you a written instruction to that effect, if it does. . . . Whereupon the court gave the instruction about which complaint is made. In view of the circumstances above detailed, we think the action of the court in giving the instruction, as well as in receiving a verdict based thereon, and in assessing the punishment was proper and correct. [Sec. 3704, R. S. 1929, sec. 3704, 4 Mo. Stat. Ann., p. 3259; State v. Levan, 306 Mo. 507, 267 S. W. 935; State v. Hubbs, 294 Mo. 224, 242 S. W. 675; State v. McVey (Mo.), 66 S. W. (2d) 857.]

Complaint is also made that the court gave oral instructions on this subject, but, as we read the record, we do not so construe the language used. Furthermore, no objection was made, nor exceptions saved to whatever action was, in fact, taken by the court, and so the matter is not before us for review.

VII. The next ground of the motion alleges error in the refusal of instructions 6d, 7d, 8d and 10d, because, as stated in the motion, "such instructions and each of them properly and justly declared the law attempted to be declared therein, and to which the defendant was entitled." Such assignment does not conform to the requirements of the statute, Section 3735, Revised Statutes 1929 (Sec. 3735, 4 Mo. Stat. Ann., p. 3275), and presents nothing for review.

VIII. The contention is made that the evidence relating to the attack on Frances, and the second attack on Emma was not admissible for the reason that in the case at bar appellant was only on trial for the first attack on Emma. There is nothing in the point because such evidence was clearly admissible as a part of the *res gestae*. [See State v. Harrison, 263 Mo. 642, 174 S. W. 57; State v. Rasco, 239 Mo. 535, 144 S. W. 449; State v. Pfeifer, supra.] In the Pfeifer case it was said, "In this contention learned counsel loses sight of the fact that, while the testimony so bitterly complained of may have tended to show rape, and other acts of sodomy, . . . yet the proof also showed that all of these acts and things were parts of the *res gestae* and admissible as such, regardless of the fact that defendant may have been hurt by testimony concerning them. [State

v. Anderson, 252 Mo. 83, 158 S. W. 817.] This was his misfortune for which he, and not the State, is at fault. He should see to it that he commits but one felony at a time.'' We think the evidence with reference to appellant requiring the two girls to kiss him good night was so closely related in point of time to the commission of the alleged offense that it was properly admitted as a part of the *res gestae*. Nor is there merit in the point that it was error to admit the evidence touching the complaint made by the girls to their parents when they arrived home a few minutes after the attacks. The details of the conversation were not related, but the evidence was limited to a showing that they made immediate complaint and disclosure of their mistreatment. There was no error in permitting the State to show the condition of the girls' clothing following the attack. [State v. Brannan, 206 Mo. 636, 105 S. W. 602; State v. Murphy, 118 Mo. 7, 25 S. W. 95.] And we think it not improper for the physician to state the length of time during which he treated the prosecuting witness on account of the bruised and lacerated condition of her private parts.

IX. Error is assigned in permitting the State to introduce ''portions of the alleged confession that did not deal with the alleged offense for which defendant was on trial at the time.'' The confession consists of several pages of closely typed matter. The objection interposed at the time the confession was being read was ''to any part of the alleged confession that deals with anything except the alleged crime for which the defendant is on trial here to-day.'' The confession deals with appellant's movements and whereabouts on the day of and for several days after the alleged offense. We are unable to determine from the objection made whether it is such portion of the alleged confession, or that portion of it relating to the attack on Frances and the first attack on Emma that is now urged as error. As the appellant on the witness stand disclosed the matters first above referred to, and as the latter has been held admissible as a part of the *res gestae*, and in view of the indefinite nature of the objection, we think no error was committed in receiving the whole of the confession.

X. There is no substantial merit in the assignment that the court permitted the prosecuting attorney to cross-examine defendant as to matters not developed on direct examination. And likewise, there is nothing in the point that error was committed in limiting appellant's counsel to two members of the bar. The court did appoint two lawyers—and as reflected by this record they were able lawyers —to represent and defend him, and this was the limit allowed by statute. [Sec. 3614, R. S. 1929, Sec. 3614, 4 Mo. Stat. Ann., p. 3187.]

XI. This brings us to the final assignment, relating to alleged improper argument on the part of one of the special prosecutors. The language complained of is: "This copper—this saddle colored defendant, this brute in man's form, violating not only God's law—" to which an objection was made, and a request that counsel be reprimanded. The ruling of the court was: "Sustained, because such argument smacks of personal views, and the jury are instructed to disregard it, and counsel is hereby reprimanded and censured for using that personal abuse." While the argument was improper, and erroneous, we think it sufficiently cured by the nature of the reprimand just quoted. .

We have examined the record proper, and find the information, verdict and judgment sufficient in form and substance.

No reversible error appearing in the record, the judgment should be affirmed. It is so ordered. *Ellison, J.,* and *Tipton, P. J.,* concur.

Date of execution set for Friday, August 16, 1935.