## FRANK LINHART V. THE STATE.

### No. 500.    Decided June 20.

1. **Continuance—Incompetent Witnesses.**—A continuance will not be granted for an absent witness where the witness is under indictment for the same crime; nor where the witness is undergoing imprisonment as a convicted felon; nor where the alleged testimony of a witness is not probably true.

2. **Nonage—Burden of Proof—Statutory Law.**—Where an accused party is between the ages of 9 and 13 years, before he can be convicted, our statute, Penal Code, article 34, devolves the burden of proof upon the State to show "that he had discretion sufficient to understand the nature and illegality of the act constituting the offense."

3. **Same—Computation of Age—Anniversary of Birth Not Necessary in, When.**—On a trial for burglary, where the evidence showed that defendant was born between 12 and 2 o'clock a. m., October 27, 1880, and the burglary was committed at 10 o'clock p. m., October 26, 1893, *Held*, that it was not necessary that he should have entered upon his thirteenth birthday, because he was in fact 13 years old the day before the anniversary of his birth.

4. **Same—Fraction of a Day.**—The law takes no notice of the fraction of a day in computing time with reference to an act done.

5. **Burglary—Indictment—Allegation as to Ownership and Possession of the Burglarized House—Sheriff.**—Where an indictment for burglary alleged ownership and possession of the house to be in one C., and the testimony showed that C. was sheriff, and held the goods under levy of an attachment writ, in the house which he had rented to keep them in, *Held*, that C. was a special owner, and the ownership and possession were properly alleged to him; and *held*, further, that it was not necessary that the indictment should describe C. as sheriff, or set out the facts constituting him such special owner.

6. **Same—Special Owner.**—A deputy sheriff placed in a house for the purpose of protecting the property from burglars is not such special owner as that ownership should be alleged in him.

APPEAL from the District Court of Parker.    Tried below before Hon. J. W. PATTERSON.

This appeal is from a judgment of conviction for burglary, the punishment assessed being two years' confinement in the reformatory and house of correction, the jury having found appellant to be under 16 years of age.

The indictment alleged the ownership and possession of the burglarized house to be in one A. H. Cleveland.

A. H. Cleveland testified: "I live in Parker County, Texas, and am acquainted with the defendant, Frank Linhart. Last October I owned and was in possession of a stock of goods, consisting of confections, tobacco, hay, etc., which said goods were situated in a storehouse formerly occupied by A. J. Lane, and owned by Mr. Lindsy, on North Main street. Sometime after I went into possession of said property I missed some goods from the store, and put Mr. D. C. Newberry, my deputy, down there at night to watch and see if he could not catch some one. If the defendant went into said house or took anything

therefrom, he did so against my consent; and if Pete Cook went into said house, he did so without my consent; and if he took any property from said house, he did so without my consent. Said house is situated in Weatherford, Parker County, Texas. I took possession of said storehouse by virtue of said writ of attachment, and kept said goods in the said house until they were sold. I had the keys to said house."

Cross-examined: "I did not pay Mr. Lane anything for the goods in said house, nor did I buy them from him. I did not get possession of said property by any voluntary act of Mr. Lane, who was the owner of the goods, and who had the building rented. A writ of attachment was issued out of the County Court and placed in my hands, and I was directed to levy said writ on said goods. I am the sheriff of Parker County, Texas, and have held said office since the last general election. It was by virtue of the above writ of attachment that I held said Lane's goods in my custody, as sheriff, at the time of the alleged burglary. As an individual or a citizen I had no interest in any of said property, and had nothing to do with it except to execute the above writ, which I did; and I afterwards sold the goods under an order from the County Court. The goods were simply in my custody as sheriff, and as an individual I paid no rent on said building. The goods in said house were in my possession and under my control at the time the alleged offense was committed. I paid the rents on the house, but paid them out of the proceeds of the sale of said goods. All I did in the premises was by virtue of said writ of attachment."

D. C. Newberry, sworn for the State, said: "Sometime last October Sheriff Cleveland put me to watch in the storehouse of A. J. Lane, the goods in said house having been attached by the sheriff. The first night I watched nothing occurred; but on the second night, about 10 o'clock, I heard some noise around the back door, and pretty soon the door was opened and I saw Peter Cook come in. He went down towards the front, and behind the counter, to where the candy and tobacco was. He filled his pockets with the goods, put some in a paper sack, and started back, when I grabbed him and told him to keep quiet. While he was in said house the defendant came up to the back door two or three times, and said, 'Hurry up, Pete.' The last time he came up and stuck his head around the door where I was standing. I grabbed him by the arm and took both of the boys to jail. This all occurred on October 26, 1893, at about 10 o'clock at night. I could not say whether Pete Cook and defendant came up to the back door together. Just before Pete Cook entered the door I could hear two voices at the door, but could not say what they were saying or who they were. Pete had to walk to the front of the house to get the goods, and about the time he got to the goods defendant pushed the door open and put his head around the door, and said, 'Hurry up, Pete;' and while Pete was getting the goods he repeated that remark several

times.   After I arrested them they told me where they had hid some goods they had gotten before.   I think Pete and Frank are about the same age.   Frank may be the largest.   The goods Cook got were held by the sheriff.''

Cross-examined: ''I did not find any of the stolen goods except what Peter Cook had that night.   The back door was not locked, but was closed and had a bale of hay against it.   I was in the house in my stocking-feet.   Do not know whether defendant came up with Pete Cook when Cook first entered the house or not.''

W. Linhart, for defendant, said: ''I am the father of defendant, and was present when he was born.   He was born between 1 and 2 o'clock on the morning of October 27, 1880, and was 13 years old on the 27th of October, 1893.   I am sure he was not born before 12 o'clock. We had taught the boy that his birthday was on the 26th of October.''

Cross-examined by the State: ''The defendant was born on the 27th day of October, 1880, between 12 and 1 o'clock in the morning, and the burglary was committed on the 26th of October, 1893, at about 10 o'clock at night.''

No briefs on file with the record.

*R. L. Henry*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of burglary, and sent to the reformatory.   He sought to continue the case for Pete Cook, Grigsby, and Jackson.   Cook was indicted for the same offense, and therefore was not a competent witness.   Grigsby, the court says, was then in the reformatory, as he was reliably informed, under a felony conviction.   Viewed in the light of the evidence adduced on the trial, the alleged testimony of Jackson is not probably true.   By him he expected to prove, that during a conversation had with the witness, appellant ascertained, just prior to the burglary, that Pete Cook was then, at that time, at the house burglarized, with intent of entering it, and that appellant stated he would go after and try and bring him away, and prevent a violation of the law.   Newberry, the deputy who was on the inside of, and was watching, the house, testified: That about 10 o'clock at night he heard a noise at the back door.   That shortly it opened.   Pete Cook entered and filled his pockets and a paper sack with goods.   Appellant several times came to the door, and called to Cook to ''Hurry up.''   The last time he did so he put his head around the door where the officer was standing, and was arrested, and both boys were then conveyed to jail.   This witness further stated: ''I could not say whether Pete Cook and defendant came to the door together.   Just before Cook entered the door I could hear two voices at the door, but could not say what they were saying,

or who they were. Pete had to go to the front of the house to get the goods. Defendant pushed the door open and put his head around the door, and said, 'Hurry up, Pete;' and while Pete was getting the goods he repeated that remark several times. After I arrested them, they told me where they had some goods they had gotten before. I did not find the other goods." There had been previous entries of the house, and goods taken at each entry. The officer was watching for the burglars at the time defendant and Cook were arrested. If the absent testimony was admissible in appellant's behalf, its probable truth is excluded by the evidence introduced by the prosecution.

It was proved for appellant that he was born between 12 and 2, at night, on the morning of October 27, 1880, and that he had been taught to regard October 26th as his birthday. It was also proved that the house was burglarized at 10 o'clock at night, October 26, 1893. It is insisted that, under the evidence, appellant was between the ages of 9 and 13 years at the time of the burglary, and therefore the burden of proof was on the State to show appellant "had discretion sufficient to understand the nature and illegality of the act constituting the offense." Penal Code, art. 34. If appellant was under 13 years of age at the time the offense was committed, the contention is sound, and the court erred in refusing to give special instructions requested by appellant. If he had passed or reached that age, then the statute does not apply. The statute has fixed the age for the purpose indicated, and there is no question of legislative authority to do so. But the position is not well taken. He was 13 years of age the day before the anniversary of his birthday. Such is the view expressed in all the authorities accessible. Speaking of the time when a person becomes of the age of 21 years, the Delaware Supreme Court, speaking through Chief Justice Bayard, said: "A person is of the age of 21 years the day before the twenty-first anniversary of his birthday. It is not necessary that he shall have entered upon his birthday, or he would be more than 21 years old. He is therefore of the age the day before the anniversary of his birth; and, as the law takes no notice of fractions of a day, he is necessarily of age the whole of the day before his twenty-first birthday, and upon any and every moment of that day may do any act which any man may lawfully do. 1 Chit. Gen. Pr., 766. It is to be observed that a person becomes of age on the first instant of the last day of the twenty-first year next before the anniversary of his birth. Thus, if a person were born at any hour of the 1st day of January, A. D. 1801 (even a few moments before 12 o'clock at night of that day), he would be of full age at the first instant of the 31st of December, 1821, although nearly forty-eight hours before he had actually attained the full age of 21, according to years, days, hours, and minutes, because there is not, in law, in this respect, any fraction of a day, and it is the same whether a thing is done upon

one moment of the day or another." The State v. Clarke, 3 Har. (Del.), 557. See also Ross v. Morrow, 85 Texas, 172; Hamlin v. Stevenson, 4 Dana, 597; Wells v. Wells, 6 Ind., 447; 1 Blacks. Comm., 164. Under the evidence adduced it is clear that appellant was 13 years of age at the time the crime was committed.

Ownership of the property and possession of the house were alleged to be in A. H. Cleveland. The testimony disclosed that he held the goods as sheriff under writ of attachment; and the house by virtue of rental contract—the rent being paid out of the proceeds of the goods levied upon. This constituted him special owner, and the indictment correctly laid the ownership and possession in him. It was not necessary to describe Cleveland, in the indictment, as sheriff of the county, or set out the facts constituting him owner of the goods. General allegations were sufficient.

Newberry, deputy sheriff, placed in the house for the purpose of detecting the burglars upon the night in question, was not such special owner as required ownership to be alleged in him. He was simply placed in the house to detect the parties who had been breaking into it. This was the extent of the authority vested in him. There is no evidence showing he had any other character of possession of the property.

The judgment is affirmed.

*Affirmed.*

Judges all present and concurring.