STATE of Missouri, Respondent,

v.

**Harry Lee STUVER, Appellant.**

No. 48956.

Supreme Court of Missouri,

Division No. 2.

Sept. 10, 1962.

Thurman, Nixon & Blackwell, Hillsboro, for appellant.

Thomas F. Eagleton, Atty. Gen., Scott O. Wright, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

LEEDY, Judge.

Appeal by Harry Lee Stuver from a judgment of the Jefferson Circuit Court convicting him of the felony of burglary in the second degree and imposing as punishment a sentence of five years' confinement in the custody of the Department of Corrections. The case is before us on a full transcript and the state's brief, but without a brief on the part of the complaining party, who will be hereinafter referred to as defendant. We look, then, to the motion for new trial for his assignments of error, and examine such of them as may preserve anything for review, and are necessary to the proper disposition of this appeal.

The building charged to have been burglarized is located on U. S. Highways 61 and 67 in Jefferson County just north of Imperial, and known as Welcome Inn Bowling Lanes. It was owned by Al Redinger, and the equipment therein used in the operation of the bowling alley was owned by his son-in-law and daughter, Jim and Marie Herrell. The structure is 165 feet long and 52 feet wide, contains eight lanes, each 85 or 90 feet in length, and has several rooms—among others, a kitchen and a furnace room. At the time in question the structure and equipment were leased to Joe Cunningham. Soda, candy, cigarettes and similar items of merchandise were kept on hand and sold as a part of the business. Oliver Blaha, the manager, lived in a trailer some 50 feet south of the building, and the Herrells lived next door to the bowling alley, but on the opposite or north side.

In the early morning hours of April 20, 1961, Blaha closed the bowling alley, and in the presence of Mr. and Mrs. Herrell fas-

tened all the doors and windows and then went to his trailer. In a short while the burglar alarm "went off" or sounded in the trailer, indicating an intrusion into the bowling alley. Blaha called the sheriff's office, and two deputies, Henry Graf and Robert Edney, were sent to the scene. They arrived in eight or ten minutes. Blaha summoned the Herrells by telephone, and these five persons (Blaha, Graf, Edney, and Mr. and Mrs. Herrell) proceeded to the bowling alley. Entering by way of the furnace room, they turned on all the lights. At first, no intruder was discovered. A search was instituted throughout the entire building, and when it was seen that the juke box and pinball machines had been broken open, the officers "called three times to anyone in the building to give themselves up." No response was received, but when the search progressed to the point where some member or members of the group reached the automatic pinsetting machines, two men (Lawrence Noel Manley and Carl Stiebing) came out of the darkness behind those machines, and, with their hands up, surrendered. Neither of these men proved to be the defendant in this case, although Manley was admittedly his "blood brother." (The difference in their surnames arises from the fact defendant had been adopted by a family in another state.) Manley and Stiebing were taken forthwith to Hillsboro, the county seat, and lodged in jail. Blaha, after again locking up the bowling alley, returned to his trailer, and shortly thereafter (about 4:30 a. m.) the burglar alarm sounded, but this time it indicated only that the kitchen door had been opened, and left so. Blaha did not report the fact of the second alarm to the authorities until 8 or 9 o'clock that morning, but he did return to the bowling alley and searched around the area to see if he "could find anybody that come out of that door." The kitchen door had been opened from the inside, but he neither saw or heard anyone, nor did he hear any car start. To the best of his knowledge, nothing was taken from the bowling alley, although the pinball machines and juke box

had been "jimmied". Entry had been effected by forcing the kitchen window.

Defendant was apprehended the next day, and upon interrogation by the authorities admitted his participation in the burglary. He stated that he, too, was behind the automatic pinsetters at the time his two companions surrendered, and, in fact, at that time had his gun pointed at the officer. He further stated he was glad the latter did not shine his flashlight on him because if he had, he (defendant) was so scared he would have shot the officer. He also told the officers where he had "stashed" the gun, and, upon investigation by the officers, it (and another one) was found at the place indicated by defendant.

The defendant was the only witness called in his behalf. He denied his guilt, and testified to the circumstances under which he and his wife and eight-months-old baby, together with Manley and Stiebing, had come to Jefferson County from Wisconsin a day or so before he was arrested at Hillsboro. He further testified he had confessed because of threats made by the officers that they would lock up his wife and child unless he did so.

◼ The foregoing facts effectively refute the ground of defendant's motion for a new trial that the evidence was insufficient to make a submissible case. Their mere statement demonstrates beyond peradventure that the jury could reasonably have found the essential elements of the offense of burglary in the second degree, as defined by § 560.070, RSMo 1959 and V.A.M.S. State v. Lindner, Mo., 282 S.W.2d 547, 549 [1]; State v. Parks, Mo., 336 S.W.2d 369, 370[2, 3]; State v. Grant, Mo., 275 S.W.2d 332, 333–334[4]; State v. Miller, Mo., 202 S.W.2d 887, 889[1, 2].

◼ State's instruction S–2–P–1 submitted the hypothesis of ownership in Joe Cunningham as to both the building and any goods, wares and merchandise then and there kept and deposited. The motion assigns this as error because there was,

allegedly, no evidence in the record showing Joe Cunningham to be such owner. The information averred the building to be "the property of Joe Cunningham," and the only evidence on that subject was that introduced by the state. It was directly to the effect that Cunningham's occupancy was as a tenant under a lease from the owner, Al Redinger. This was sufficient to sustain the allegation of ownership of the building in Cunningham. See State v. Carey, 318 Mo. 813, 819, 1 S.W.2d 143, 146, where, in reaffirming State v. Harrison, Mo., 285 S.W. 83, 87, and quoting approvingly from State v. McGuire, 193 Mo. 215, 226, 91 S.W. 939, 942, it was said, "[P]roof of ownership of a building burglarized does not refer to the title, but the occupancy. * * * 'In burglary, ownership means any possession which is rightful as against the burglar' (citing cases)."

■ The ownership of goods within a building alleged to have been burglarized not being an element of the crime of burglary in the second degree under § 560.070 (the single offense charged in the information in this case), proof of such ownership was immaterial and unnecessary. State v. Goehler, 193 Mo. 177, 91 S.W. 947, 949; State v. Lackey, 230 Mo. 707, 132 S.W. 602, 604; State v. Tyrrell, 98 Mo. 354, 11 S.W. 734. It was, therefore, error to submit by said instruction the question of the *ownership* of such goods (as distinguished from the requisite finding of their being kept and deposited in the building at the time it was burglarized), but this was error against the state, and not the defendant, and he, not having been prejudiced thereby, will not be heard to complain.

■ This brings us to the consideration of the one serious question in the case, and that is as to the propriety of giving in the first instance (and not supplementarily) state's instruction S–4, which reads as follows:

"The Court instructs you that if, under the evidence and under the other instruc-tions given to you by the Court, you find the defendant guilty, then it is your duty to determine and to assess the defendant's punishment. However, the Court further instructs you that if, under the evidence and under the other instructions given you by the Court, you do find the defendant guilty, but you are unable to agree upon the punishment to be assessed, then you shall so state in your verdict, and in that event, but not otherwise, the Court will assess the punishment."

The state does not undertake to support the court's action in so giving the instruction either as to the timeliness or text thereof. Indeed, its brief does not even mention the instruction, although it was directly challenged by the motion for a new trial as being erroneous for the reason (among others) that it "encouraged the jury to bring in a verdict without assessing the punishment."

Under § 546.440, RSMo 1959 and V.A.M.S., the court may properly (and, in fact, is required to) assess the punishment in instances where the jury agrees on a verdict of guilty, but fails to agree upon the punishment or does not declare such punishment; but the propriety of instructing the jury in this regard is strictly limited. Where the jury reports it has agreed upon guilt, but cannot agree upon punishment, it is held to be proper for the court to give a supplemental instruction substantially in the form of S–4 here challenged (State v. Bunch, 333 Mo. 20, 25, 62 S.W.2d 439, 442), or for the court to inform the jury that a verdict so stating could be returned (State v. Howard, 324 Mo. 145, 159, 23 S.W.2d 11, 16), and in connection therewith to submit a form of verdict for use in that contingency. State v. Burton, 355 Mo. 792, 797, 198 S.W.2d 19, 22; State v. Jackson, 340 Mo. 748, 757, 102 S.W.2d 612, 618; State v. Ward, 337 Mo. 425, 434, 85 S.W.2d 1, 6. Originally, even this practice was not permissible. Fooxe v. State, 7 Mo. 502.

The only case we have found wherein such an instruction was given in the first

instance is State v. Gilbreath, 130 Mo. 500, 32 S.W. 1023, and that action was held to be error. In reversing and remanding the case for that error (and another), this court said, "The court erred in giving instruction No. 4. The law devolved upon the jury the duty of affixing the punishment of the defendant. The court invited the jury to disregard that portion of their duty by giving this instruction."

In referring to State v. Gilbreath, supra, this court, in State v. Hubbs, 294 Mo. 224, 232, 242 S.W. 675, 678, said this: "In the Gilbreath Case the instruction held to be erroneous appears to have been given with the general instructions prior to the retirement of the jury for deliberation. In such case what was said in the Fooxe Case, that the court 'told the jury in substance, that this was no part of their duty,' was peculiarly applicable—more so, indeed, than the facts of the Fooxe Case called for. * * * *It is the primary duty of the jury to assess the punishment. To permit the court in the first instance to point out the way for the jury to avoid its duty in this regard, as was done in the Gilbreath Case, may well be regarded as contrary to the policy of the law.*" (Italics, the present writers.) These italicized sentences are quoted approvingly by the court en banc in State v. Bevins, 328 Mo. 1046, 1052, 43 S.W. 2d 432, 435.

Insofar as we are aware, the only case even hinting a contrary view is State v. Levan, 306 Mo. 507, 267 S.W. 935; but it did not involve a situation where an instruction on the subject under discussion was given in the first instance, nor, for that matter, at any time except by way of a form of verdict furnished after the jury had reported agreement on a verdict of guilty, and inability to agree on punishment. While there is somewhat loose language in that opinion which appears to advocate the practice of instructing the jury in advance with respect to the provisions of what is now § 546.440, the opinion does not purport to overrule the Gilbreath and Hubbs cases either expressly, nor, do we think, by

fair implication. And in any event, even if they were, they were restored to full vigor by the later Bevins case. And certainly it has never been the practice to so instruct in the first instance, and the error of doing it in the instant case would seem to be emphasized by reason of the fact that the verdict returned found defendant guilty, but did not assess the punishment. This was subsequently done by the court, as the instruction told the jury it would be in the event such a verdict were returned.

Other assignments involve matters which are not likely to recur upon another trial, so they need not be determined. For the error in giving instruction S–4 in the first instance with the general instructions, the judgment is reversed and the cause remanded.

All of the Judges concur.