STATE of Missouri, Respondent,

v.

Kerry BROWN, Appellant.

No. 53462.

Supreme Court of Missouri,
En Banc.

July 21, 1969.

Norman H. Anderson, Atty. Gen., Jefferson City, Walter S. Drusch, Jr., Asst Atty. Gen., Cape Girardeau, John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Special Asst. Atty. Gen., St. Louis, for respondent.

Val Terschluse and Lee Platke, St. Louis 1, for appellant.

FINCH, Judge.

Defendant appeals from the judgment of conviction entered against him after a jury found him guilty of assault with intent to kill with malice aforethought and assessed his punishment at forty-five years in the Department of Corrections. We affirm.

The issues raised on this appeal are (1) the method of determining when one reaches his seventeenth birthday, and whether the trial court lacked jurisdiction because the defendant was under seventeen at the time of the alleged offense, (2) the sufficiency of the evidence, (3) whether allowing a police officer to testify from a stretcher was so inflammatory and prejudicial as to deny defendant a fair trial, (4) whether failure of the court, on its own initiative, to have the jury locked up during the trial prejudiced the defendant, and (5) the timeliness and propriety of an instruction informing the jury that if they agreed on guilt but not on punishment, they might return a verdict of guilty, in which event the court would fix the punishment.

The first issue presented is whether the court had jurisdiction of the defendant. A motion to dismiss was filed in the trial court stating that the circuit court lacked jurisdiction because defendant was not yet seventeen years of age at the time of the occurrence for which he was prosecuted. Section 211.031, RSMo 1959, V.A. M.S., provides that the juvenile court shall have exclusive original jurisdiction of a minor alleged to have violated a law "prior to having become seventeen years of age". Since the defendant was born on February 25, 1950, at 6:32 p. m. and the crime for which he was prosecuted occurred on February 25, 1967, at 4:30 p. m., the question as to when he legally became seventeen years of age is presented.

Defendant asserts that the proper mode of computing his age in determining the applicability of the Juvenile Code is by hours rather than by days, and that he did not attain the age of seventeen years until 6:32 p. m. on the 25th day of February, 1967. Defendant cites no cases which support his contention.

Defendant's theory is contrary to two established rules of the common law which, in the absence of constitutional or statutory provisions to the contrary, are applicable in Missouri. Section 1.010, RSMo 1959, V.A.M.S.

In the first place, as a general rule, the law does not consider fractions of a day. Williams v. Williams, 325 Mo. 963, 30 S. W.2d 69. While exceptions to this rule have been made by various courts, most relate to situations where the two acts occur on the same day, such as priorities of liens or deeds filed on the same day. As to computation of a person's age, the same contention as defendant here makes was made in the early case (1633) of Herbert v. Turball, 1 Keble 590, 83 Eng.Reprint 1129, 1 Sid 162, 82 Eng.Reprint 1033, and the court stated: " * * * and whatever hour he was born is not material, there be-

ing no fraction of days." No cases to the contrary have been found.

A second rule of the common law contrary to defendant's theory is the rule that a person reaches his next year in age at the first moment of the day prior to the anniversary of his birth. Nichols v. Ramsel, (1677) 2 Mod. 280, 86 Eng.Reprint 1072; Nelson v. Sandkamp, 227 Minn. 177, 34 N. W.2d 640, 5 A.L.R.2d 1136; Commonwealth v. Howe, 35 Pa.Super. 554; and Lenhart v. State, 33 Tex.Cr.R. 504, 27 S.W. 260. See also Annotation: 5 A.L.R.2d 1143. It may be noted that this rule does not follow the general rule of common law for the computation of time, which was to exclude the first day and include the last. This exception has been followed for such a long period of time that it has achieved a status of its own and should be followed in the absence of a statutory enactment to the contrary. The only case we have found, where no statute is involved, expressing a contrary view is People v. Stevenson, 17 N.Y.2d 682, 269 N.Y.S.2d 458, 216 N.E.2d 615. This case, however, does not support defendant's contention in this case for its holding would be that defendant reached seventeen years of age on the first moment of February 25, 1967. It is not support for the contention that defendant did not become seventeen until 6:32 p. m. on that date. Accordingly, we overrule the contention that the trial court did not have jurisdiction of this defendant.

Defendant's second contention is that the verdict was against the weight of the credible evidence and the trial court should have set aside the verdict and directed a judgment of acquittal.

The evidence showed that on the 25th day of February, 1967, at about 4:30 p. m., a man entered a jewelry store owned by William Simpkins at 5927 Easton in St. Louis. He held a .38 caliber revolver in his hand and announced a holdup. Also present in the store was Conrad Rodgers, a police officer off duty, Henry Levin, mana-

ger of a neighboring store, and Lloyd Fiehler, an accountant, who was working on the books of the store.

Simpkins, who was seated at a watchmaker's bench in the back of the store, fell onto a burglar alarm on the floor. The robber, identified by Rodgers, Levin and Fiehler as Kerry Brown, then reached over the counter and shot Simpkins in the neck. There was an exchange of gunfire between Officer Rodgers and the holdup man, both of whom received serious injuries.

The man left the store and was observed entering a certain type of automobile near the jewelry store. The defendant was seen to enter the same car when he left a doctor's office a few minutes later. A police officer stopped the same car within one hour after the assault, found the defendant in the car suffering from bullet wounds and took him to the hospital. The defendant denied being present at the jewelry store at the time of the assault. He testified that he had received his gunshot wounds in a fight with his brother.

There was sufficient evidence to support the verdict of the jury.

■ Defendant's third contention is that the action of the trial court in allowing Officer Rodgers to be brought into court on a stretcher and to testify therefrom "was so inflammatory as to deprive the jury of objectivity to the prejudice of the defendant".

When the trial started, the assistant circuit attorney advised the judge and counsel for defendant that Officer Rodgers would be brought to court on a stretcher and that his doctor wanted a nurse to remain nearby in case he should become ill. Counsel for defendant objected on the basis that this would tend to limit vigorous cross-examination, if necessary, and that the officer's appearance on a stretcher would be inflammatory and would preju-

dice the jury against defendant. This objection was overruled. Subsequently, during Rodgers' direct testimony, counsel for defendant, out of the hearing of the jury, moved for a mistrial on the basis that tears had appeared in Rodgers' eyes and that this would elicit sympathy of the jury for Rodgers and be prejudicial to the defendant. The request for a mistrial was denied.

These objections relate to an area in which the trial court necessarily has considerable discretion. He could observe at first hand whether the fact that Officer Rodgers was on a stretcher unduly and unfairly prejudiced the jury against the defendant. He concluded that it did not, and also decided that the fact that tears appeared in Rodgers' eyes during his testimony was not a basis for the declaration of a mistrial. These questions were raised again by defendant's motion for new trial. Again, the trial court declined to give relief, and we cannot say that he was wrong or that he abused his discretion. The trial court was present and was in a much better position to judge these matters than are we on the basis of the record presented to us on appeal.

■ Defendant urges that the State is not compelled to call all witnesses who may have witnessed a homicide, and apparently contends that fundamental fairness would have required the State to rely on other eyewitnesses and not call Officer Rodgers. We cannot agree. Defendant was asserting an alibi and was challenging the sufficiency of the identification of him at the scene of the crime. He urged in the trial court, and again on appeal, that there should have been a directed verdict of acquittal on account of insufficient identification. Under such circumstances, he cannot contend that the testimony of Officer Rodgers was merely cumulative and hence unnecessary. Furthermore, the defendant himself, according to the evidence, had shot Rodgers and created the physical condition which made it necessary for Rodgers to be brought to court on a stretcher. It would be anomalous indeed to say that because of that physical condition the witness could not be used by the State in the trial of the defendant on the charge of committing that very offense.

■ In his motion for new trial defendant also contended that it was unnecessary for the State to bring Rodgers to court on a stretcher and that this was done solely to influence the jury. A hearing was conducted on this allegation, at which defendant introduced three photographs of the defendant. One, dated July 19, 1967, shows Officer Rodgers in a chair at his home with his wife and two children. He is holding a Jaycee award. Another, dated September 19, 1967, shows him on a stretcher before being taken into the courtroom to testify. The third one, dated September 21, 1967, shows Rodgers in a wheelchair receiving a Distinguished Service Citation from the St. Louis Police Department. These photographs had appeared in issues of the St. Louis Globe-Democrat dated August 21, 1967, September 20, 1967, and September 22, 1967, respectively, and these issues of the paper were also introduced in evidence.

Defendant asserts that these pictures show that Rodgers could sit up and that it was not necessary for him to have been brought to court on a stretcher to testify. However, the defendant offered no evidence to further explain the photographs or to show how long Rodgers had been sitting up in the chair or wheelchair. There was no testimony from the doctor or any other person to show that it was unnecessary for Rodgers to be brought to court on a stretcher. The mere introduction of these photographs was insufficient to show that the State acted in bad faith, and nothing in the way of evidence was offered to show that his appearance on a stretcher prejudiced the jury against him.

■ Next, defendant asserts that the court erred in failing to keep the jury

locked up during the trial "for the reason that the trial received undue and excessive publicity from the newspapers to the prejudice of defendant". Soon after this trial commenced, the judge asked the attorneys if they wanted the jury kept together before final submission of the case. The matter was discussed and counsel for defendant then stated: "I don't think it necessary that they be kept together before the submission of the case." Nevertheless, the issue of whether the jury should have been kept together was raised in defendant's motion for new trial. That motion recites that the trial received undue and excessive publicity and notoriety in the newspapers during the trial "to which the members of the jury had free access to read and ponder at will which they would not have had the opportunity to do had they been locked up during the trial proceedings."

A hearing was held on the defendant's motion for new trial. At that hearing the only evidence offered relating to this issue consisted of two issues of the St. Louis Globe-Democrat dated September 20 and 22, 1967. The issue of September 20 contains an account of testimony heard during the trial and included a photograph of Officer Rodgers on a stretcher entering the courtroom. The issue of September 22 makes no reference to the trial but does contain on page 11–A an account of Officer Rodgers and other police officers receiving various Police Department awards and of the retirement of certain officers. Accompanying that account was a photograph of Rodgers in a wheelchair receiving his award. Although this trial lasted four days, no other newspaper accounts of the trial were offered in evidence. This evidence did not disclose excessive publicity. Furthermore, there was no testimony that any juror ever saw or read either issue of the newspaper, or that the jury was affected in any way by the fact that it was not kept together during the period preceding actual submission of the case for jury deliberation. This allegation in

the motion for new trial is totally unsupported by the evidence and we overrule this contention.

■ Finally, defendant complains of the action of the trial court in giving Instruction No. 6 about five hours after the case had been submitted to the jury and it began its deliberations. At that time the jury returned to the courtroom and the following took place.

"THE COURT: Ladies and gentlemen of the jury, have all twelve of you agreed upon a verdict?

"JUROR 8: Your Honor, we have a question. We would like to know, is the defendant subject to parole in one-third of his time, or is this something you cannot tell us at this time?"

The Court informed the jury that he was not permitted to answer the inquiry. This discussion then followed:

"JUROR 8: No. We have not reached a verdict, then.

"THE COURT: You have not reached a verdict?

"JUROR 8: No, sir.

"THE COURT: I'm not going to impose on you. You folks know, among yourselves, I don't, is there any reason for you to consider further?

"JUROR 10: Yes, sir.

"JUROR 8: Absolutely."

At that point, the court read Instruction No. 6:

"INSTRUCTION NO. 6

"In addition to the other instructions which the Court has heretofore given you, you are further instructed that under the laws of this State the jury, after hearing the evidence and instructions of the Court, should retire and decide upon the guilt or innocence of the defend-

ant in this case; and if the defendant is found guilty by you to assess his punishment in accordance with the other instructions of the Court. If, however, after due deliberation, you have been able to and do agree upon the guilt of the defendant but you are unable to agree upon the punishment to be assessed in this cause for such guilt, you may return into court a verdict which states that you have agreed upon the guilt of the defendant but are unable to agree upon the punishment for such guilt and, in that event, the Court may assess the punishment."

The court also gave the jury an additional form of verdict:

"We, the jury, in the above entitled cause, find the defendant guilty of *assault with intent to kill with malice aforethought as charged. We further find that we are unable to assess the punishment.*

(sic) _____ Foreman."

Defendant asserts that under Supreme Court Rules 27.02–27.06, V.A.M.R., and particularly Rule 27.03, an instruction such as No. 6 is permissible after the jury has deliberated for a reasonable time and then advises the court that it has agreed on guilt but not on punishment, citing cases such as State v. Robinson, Mo., 328 S.W.2d 667; State v. Jackson, 340 Mo. 748, 102 S.W.2d 612; and State v. Hubbs, 294 Mo. 224, 242 S.W. 675, but that the answers of the jurors in this case disclosed that they had not agreed on guilt and therefore it was prejudicially erroneous for the court to give Instruction No. 6.

The view that an instruction such as No. 6 should not be given until the jury has deliberated for a time and has agreed on guilt and so informed the court is bottomed on the premise that it is erroneous to give such an instruction along with the other instructions given to the jury before it commences its deliberations. There are two opinions of this court expressly so holding.

They are State v. Stuver, Mo., 360 S.W.2d 89, and State v. Gilbreath, 130 Mo. 500, 32 S.W.2d 1023.

Both the Stuver and Gilbreath cases express the view that when such an instruction is given along with other instructions at the close of the case, it invites the jury to disregard their duty to fix punishment as well as determine defendant's guilt. Both cases cite and rely on Fooxe v. State, 7 Mo. 502.

Actually, Fooxe did not deal with the question of when the court may instruct the jury that they are to determine guilt and assess punishment, but that if they agree on guilt but are unable to agree on punishment, they may return a verdict which so states. Instead, in Fooxe, the court, after the jury reported that they had been unable to agree on a verdict, instructed the jury "that they had the right and authority to return a general verdict of guilty, without assessing any punishment." This, says Fooxe, "told the jury in substance, that this was no part of their duty, and they had authority to bring in a general verdict. Whereas the power of the court is merely contingent, not primary, and only to be exercised where a failure of duty, or a disagreement on the part of the jury requires its exercise."[1]

In State v. Levan, 306 Mo. 507, 267 S.W. 935, this court, in dictum, expressed the view that such an instruction given in advance of disagreement by the jury on punishment should be permissible.

■ We hold that it is permissible to give such an instruction along with the other instructions in the case at the time the judge charges the jury following the conclusion of the evidence. Instruction No. 6 informs the jury that they first are to determine the guilt or innocence of the defendant. Next, it tells them that if they find defendant guilty, they should assess his punishment in accordance with the court's instructions. Finally, it tells them that if, after due deliberation, they have

found defendant guilty but cannot agree on punishment, they may return a verdict which so states. In that event, the instruction states, the punishment will be fixed by the court. It does not say or imply that the jury should or may shirk its duty of seeking to fix punishment after deciding guilt.[1] Such instruction is in accordance with the provisions of Supreme Court Rules 27.02 through 27.06 and with the statutes after which such rules were patterned. Rule 27.02, for example, provides that in all cases of conviction where there is any alternative or discretion as to the kind or extent of punishment, the jury *may* assess the punishment in their verdict.

A conclusion on our part that Instruction No. 6, as worded, would cause a jury to shirk its responsibility of fixing punishment would indicate a distrust of the jury and a belief that it would not follow the directions of the court as set forth in Instruction No. 6. We instruct the jury in connection with their determination of guilt or innocence and the law to follow in those deliberations. It would be illogical to trust the jury to follow such instructions pertaining to defendant's life and liberty and at the same time be unwilling to trust the jury to follow an instruction with reference to procedure in the event it should agree on guilt but not on punishment. We perceive no valid basis for assuming that the jury would not follow the latter instruction or that it would shirk its obligation to assess punishment if it should find defendant guilty. Obviously, the instruction did not have such an effect here because subsequently the jury determined both guilt and punishment.

The Gilbreath-Stuver rule may lead to mistrials in some cases where the jury has agreed on guilt but cannot agree on punishment. When a jury returns to ask questions, they may not indicate, or know to indicate, that they have agreed on guilt.

For example, in the case of State v. Ward, 337 Mo. 425, 85 S.W.2d 1, it was by accident that a question by defense counsel elicited the fact that the jury had agreed on guilt but not punishment, after which the court instructed the jury in a manner similar to Instruction No. 6 in this case. Absent an instruction such as No. 6, the jury may be unaware that they may return a verdict which determines guilt and expresses inability to agree on punishment. Furthermore, questioning of the jury at that time sometimes leads to incidents which result in reversals.

We have concluded that it will be better that this instruction be given along with other instructions at the close of all the evidence. To the extent that the Stuver and Gilbreath cases are inconsistent with the conclusions herein reached, they should no longer be followed. In view of the foregoing conclusion, it was not error for the trial court to give Instruction No. 6, even if we assume that what the jurors said did not disclose that they had agreed on guilt.

There remains only the question of whether what occurred when Instruction No. 6 was given to the jury indicated, as defendant contends, that the trial court believed the defendant to be guilty. We find no merit in that contention. The trial court did not so state nor imply, and the instruction clearly told the jury that they were to determine guilt or innocence.

Judgment affirmed.

All concur except SEILER, J., who concurs in result in separate concurring opinion filed.

SEILER, Judge (concurring in result).

I concur in the affirmance of the judgment, but point out it is not necessary in deciding this case to announce a new rule

---

1. In argument relative to this instruction counsel should be required to adhere to the terms of the instruction and should not be permitted to argue that jurors may shirk their duty to attempt to agree on punishment after they have determined guilt.

that henceforth juries will be instructed at the outset of their deliberations that if they agree on guilt, but not punishment they can return a verdict of guilty, in which case the court will fix the punishment. In the case before us, the jury *did* fix both guilt and punishment. Thus, what would be the effect had the jury followed Instruction No. 6 and fixed guilt only is not before us.

From territorial days to the present, Missouri trial courts have not instructed juries at the outset of the deliberations as is now proposed. This has not been done until the jury has informed the court they are unable to agree on punishment. Then the instruction is given.

The main opinion changes this long-established rule on the basis that it may lead to mistrials where the jury has agreed on guilt, but cannot agree on punishment. This is possible, but we have no evidence or judicial knowledge one way or the other as to how often this happens, if at all. Another basis given is that Rule 27.02 (the rule is closely patterned after the statute, Sec. 546.410, RSMo 1959, which has remained virtually unchanged for almost 125 years). says the jury *may* assess the punishment. Although the opinion does not develop the underlining of the word may, the implication is that fixing of punishment is to be regarded as merely a jury privilege. In State v. Bevins, banc, 328 Mo. 1046, 43 S.W.2d 432, 434, in discussing this word "may" in the statute (now rule) mentioned, the court indicated "may" meant "shall" and said the purpose of the same statutory provisions (now rules) as those referred to in the present opinion was " * * * to place upon the jury the duty, not merely to grant the privilege, of determining the punishment if they can agree thereon * * *"

I see no compelling reasons to change this long-established state of affairs and, on the other side, I can see where many ingenious and indirect arguments will be made to juries that they need not let punishment bother them because if they cannot agree on it, the judge will take care of it.

It is expecting too much of human nature for prosecutors not to take advantage of this opportunity and for juries not to be influenced thereby. Steadily, perhaps rapidly, we will get to the place where more and more punishments are set by the court. It seems to me this would be a usurpation by the courts of what has traditionally in Missouri been primarily the province of the jury. I am not sure it is our place to cause this to occur.