356 F.Supp. 831 (1973)
Kerry BROWN, Petitioner,
v.
August H. BALDWIN, Superintendent (Missouri Training Center for Men, Moberly, Missouri), Respondent.
No. 72 C 665(3).
United States District Court, E. D. Missouri, E. D.
March 8, 1973.
*832 *833 Louis Gilden, St. Louis, Mo., for petitioner.
John C. Danforth, Atty. Gen., State of Missouri, Preston Dean, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

MEMORANDUM AND ORDER
WEBSTER, District Judge.
Kerry Brown, a state prisoner, petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of assault with intent to kill with malice aforethought in the Circuit Court of the City of St. Louis, Missouri and is presently serving a sentence of forty-five (45) years in the Missouri Training Center for Men at Moberly, Missouri. An Order to Show Cause was entered November 3, 1972, and a Response was filed December 5, 1972. An attorney entered his appearance for petitioner on January 8, 1973 and filed a Reply to the Response on January 15, 1973.
*834 Petitioner alleges the following grounds for the writ:
A. The Circuit Court lacked jurisdiction because petitioner was a minor at the time the offense was committed;
B. Denial of a fair trial because one witness for the State was brought into court on a stretcher, accompanied by a uniformed nurse, and was permitted to present cumulative and unnecessary testimony which inflamed and prejudiced the jury and because prejudicial publicity was communicated to the jury;
C. The verdict was against the weight of the evidence because the state failed to prove petitioner was at the scene of the crime on the day in question;
D. The court invaded the province of the jury when, after the jury had deliberated five (5) hours and was unable to reach a verdict, it submitted an instruction (number 6) that if the jury had agreed upon the guilt of the defendant but was unable to agree on punishment, then the jury could return the verdict and the court would set the punishment;
E. Denial of a fair trial by an impartial jury because the prosecutor peremptorily struck all Negroes from the panel of veniremen solely because of their race;
F. Denial of effective assistance of counsel because counsel was not adequately prepared and made no attempt to secure witnesses in defense.
Points A, B, C and D were decided adversely to petitioner by the Supreme Court of Missouri on direct appeal of his conviction. State v. Brown, 443 S. W.2d 805 (Mo. en banc 1969). Points E and F were decided adversely to petitioner by the Supreme Court of Missouri in his appeal from a denial of a motion for post-conviction relief under Missouri Supreme Court Rule 27.26 (V.A.M.R.). Brown v. State, 470 S.W.2d 543 (Mo. 1971). Therefore, as to these issues, petitioner has exhausted all available state remedies as required by 28 U.S.C. § 2254(b).
The Missouri Supreme Court summarized the factual background of this case as follows:
"The evidence showed that on the 25th day of February, 1967, at about 4:30 p. m., a man entered a jewelry store owned by William Simpkins at 5927 Easton in St. Louis. He held a .38 caliber revolver in his hand and announced a holdup. Also present in the store was Conrad Rodgers, a police officer off duty, Henry Levin, manager of a neighboring store, and Lloyd Fiehler, an accountant, who was working on the books of the store.
"Simpkins, who was seated at a watchmaker's bench in the back of the store, fell onto a burglar alarm on the floor. The robber, identified by Rodgers, Levin and Fiehler as Kerry Brown, then reached over the counter and shot Simpkins in the neck. There was an exchange of gunfire between Officer Rodgers and the holdup man, both of whom received serious injuries.
"The man left the store and was observed entering a certain type of automobile near the jewelry store. The defendant was seen to enter the same car when he left a doctor's office a few minutes later. A police officer stopped the same car within one hour after the assault, found the defendant in the car suffering from bullet wounds and took him to the hospital. The defendant denied being present at the jewelry store at the time of the assault. He testified that he had received his gunshot wounds in a fight with his brother."
State v. Brown, 443 S.W.2d 805, 807 (Mo. en banc 1969)

A.
Petitioner's first ground is that the Circuit Court lacked jurisdiction because petitioner was a minor at the time the offense was committed. Section 211.031(2) R.S.Mo., V.A.M.S. (1959) provides that the juvenile court shall have exclusive jurisdiction of a minor *835 who is alleged to have violated a law "prior to having become seventeen years of age." The evidence is undisputed that the offense occurred February 25, 1967 at 4:30 p. m. and that defendant was born February 25, 1950 at 6:32 p. m. No Missouri statute provided a rule for computing a person's age and therefore the Missouri Supreme Court was required to apply the common law. § 1.010, R.S.Mo. (1959). The Missouri Supreme Court correctly concluded that on the basis of either of two common law rules,[1] the petitioner had reached seventeen years of age at the time of the offense and consequently the juvenile court did not have jurisdiction. State v. Brown, 443 S.W.2d 805, 806-807 (Mo. en banc 1969). Petitioner does not point out how that interpretation of § 211.031(2), R.S.Mo. (1959) has placed him "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a).[2] This contention is without merit.

B.
Petitioner's second ground is that he was denied a fair trial because (1) a witness for the state (Officer Rodgers) was brought into court on a stretcher, accompanied by a uniformed nurse, and was permitted to present cumulative and unnecessary testimony which inflamed and prejudiced the jury and (2) prejudicial publicity was communicated to the jury.

(1)
The Supreme Court of Missouri accurately summarized what transpired concerning the testimony of Officer Rodgers:
"When the trial started, the assistant circuit attorney advised the judge and counsel for defendant that Officer Rodgers would be brought to court on a stretcher and that his doctor wanted a nurse to remain nearby in case he should become ill. Counsel for defendant objected on the basis that this would tend to limit vigorous cross-examination, if necessary, and that the officer's appearance on a stretcher would be inflammatory and would prejudice the jury against defendant. This objection was overruled. Subsequently, during Rodgers' direct testimony, counsel for defendant, out of the hearing of the jury, moved for a mistrial on the basis that tears had appeared in Rodgers' eyes and that this would elicit sympathy of the jury for Rodgers and be prejudicial to the *836 defendant. The request for a mistrial was denied."
State v. Brown, 443 S.W.2d 805, 807-08 (Mo. en banc 1969)
The court concluded:

"These objections relate to an area in which the trial court necessarily has considerable discretion. He could observe at first hand whether the fact that Officer Rodgers was on a stretcher unduly and unfairly prejudiced the jury against the defendant. He concluded that it did not, and also decided that the fact that tears appeared in Rodgers' eyes during his testimony was not a basis for the declaration of a mistrial. These questions were raised again by defendant's motion for new trial. Again, the trial court declined to give relief, and we cannot say that he was wrong or that he abused his discretion. The trial court was present and was in a much better position to judge these matters than are we on the basis of the record presented to us on appeal." Id. at 808. (Emphasis supplied).
It is well settled that evidentiary matters are not grounds for relief by way of habeas corpus unless a specific provision of the Constitution is violated or an error is of such magnitude as to violate the due process clause of the Fourteenth Amendment. Atwell v. Arkansas, 426 F.2d 912, 915 (8th Cir. 1970); Taylor v. Minnesota, 466 F.2d 1119 (8th Cir. 1972); Tomlin v. Baldwin, 72 C. 507(3) at 2 (E.D.Mo.1972). The bare facts from the record do not demonstrate that what transpired rendered petitioner's trial fundamentally unfair or that the trial judge, who actually observed the situation, was plainly incorrect in reaching the same conclusion. Petitioner argues, additionally, that what transpired rendered his trial fundamentally unfair in the circumstances because Officer Rodgers' testimony was cumulative and unnecessary. Officer Rodgers and two other eyewitnesses identified petitioner as the perpetrator of the crime. William Simpkins, the store owner who was seriously wounded, was unable to identify petitioner. Petitioner's defense in the trial court and on appeal (and one of the grounds urged here for the writ) was that the evidence was insufficient to show that he was even present at the scene of the crime. State v. Brown, 443 S.W.2d 805, 808 (Mo. en banc 1969). Petitioner also asserted an alibi defense. Id. The Supreme Court correctly concluded that it was not fundamentally unfair for the state to call Officer Rodgers as a witness.[3]

(2)
Petitioner's contention that his trial was rendered unfair because prejudicial publicity was communicated to the jury is based on the fact that the jury was not sequestered prior to final submission of the case and his conclusion that the trial received undue and excessive publicity. The Supreme Court of Missouri summarized the publicity the trial received:
"A hearing was held on the defendant's motion for new trial. At that hearing the only evidence offered relating to this issue consisted of two issues of the St. Louis Globe-Democrat dated September 20 and 22, 1967. The issue of September 20 contains an account of testimony heard during the trial and included a photograph of Officer Rodgers on a stretcher entering the courtroom. The issue of September 22 makes no reference to the trial but does contain on page 11-A an account of Officer Rodgers and other police officers receiving various Police Department awards and of the retirement of certain officers. Accompanying *837 that account was a photograph of Rodgers in a wheelchair receiving his award. Although this trial lasted four days, no other newspaper accounts of the trial were offered in evidence."
State v. Brown, 443 S.W.2d 805, 809 (Mo. en banc 1969).
To prevail on a claim that prejudicial publicity rendered a trial unfair it must be shown that either (1) the publicity was communicated to the jury and prejudiced one of their number against the defendant, e. g. Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), or (2) the publicity in the circumstances involved "such a probability that prejudice will result that [the trial] is deemed inherently lacking in due process," e. g. Estes v. Texas, 381 U.S. 532, 542-543, 85 S.Ct. 1628, 1633, 14 L.Ed.2d 543 (1965); Sheppard v. Maxwell, 384 U.S. 333, 352, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963). The Supreme Court of Missouri correctly concluded that there was no evidence "that any juror ever saw or read either issue of the newspaper, or that the jury was affected in any way by the fact that it was not kept together during the period preceding actual submission of the case for jury deliberation." State v. Brown, 443 S.W.2d 805, 809 (Mo. en banc 1969). The evidence also fails to show anything approaching the "carnival atmosphere" in Sheppard, the likely prejudicial impact of televising the trial in Estes, or the repeated and in-depth exposure to the "spectacle" of the defendant confessing to the crime in a police interview on local television in Rideau.

C.
The next ground urged is that the verdict was against the weight of the evidence because the state failed to prove petitioner was at the scene of the crime on the day in question. This contention is frivolous. Three eyewitnesses positively identified petitioner as the perpetrator of the crime.

D.
Petitioner contends that the court invaded the province of the jury when, after the jury had deliberated five (5) hours, the jury had returned to the courtroom and the following took place:
"`THE COURT: Ladies and gentlemen of the jury, have all twelve of you agreed upon a verdict?
`JUROR 8: Your Honor, we have a question. We would like to know, is the defendant subject to parole in one-third of his time, or is this something you cannot tell us at this time?'
The Court informed the jury that he was not permitted to answer the inquiry. This discussion then followed:
`JUROR 8: No. We have not reached a verdict, then.
`THE COURT: You have not reached a verdict?
`JUROR 8: No, sir.
`THE COURT: I'm not going to impose on you. You folks know, among yourselves, I don't, is there any reason for you to consider further?
`JUROR 10: Yes, sir.
`JUROR 8: Absolutely.'"
The court then read the following:
`"INSTRUCTION NO. 6
"`In addition to the other instructions which the Court has heretofore given you, you are further instructed that under the laws of this State the jury, after hearing the evidence and instructions of the Court, should retire and decide upon the guilt or innocence of the defendant in this case; and if the defendant is found guilty by you to assess his punishment in accordance with the other instructions of the Court. If, however, after due deliberation, you have been able to and do agree upon the guilt of the defendant but you are unable to agree upon the punishment to be assessed in this cause for such guilt, you may return into court a verdict which states that you have agreed upon the *838 guilt of the defendant but are unable to agree upon the punishment for such guilt and, in that event, the Court may assess the punishment.'" (Emphasis supplied)
The court also gave the jury an additional form of verdict:
"We, the jury, in the above entitled cause, find the defendant guilty of assault with intent to kill with malice aforethought as charged. We further find that we are unable to assess the punishment.
 ___________________________
 Foreman."
Prior to State v. Brown, 443 S.W.2d 805 (Mo. en banc 1969), the Supreme Court of Missouri had previously held in State v. Stuver, 360 S.W.2d 89 (Mo.1962) that "an instruction such as No. 6 should not be given until the jury has deliberated for a time and has agreed on guilt and so informed the court. . . ." State v. Brown, supra, 443 S.W.2d at 810. See also State v. Gilbreath, 130 Mo. 500, 32 S.W. 1023 (1895). In Brown the court stated:
"Both the Stuver and Gilbreath cases express the view that when such an instruction is given along with other instructions at the close of the case, it invites the jury to disregard their duty to fix punishment as well as determine defendant's guilt."
State v. Brown, supra, 443 S.W.2d at 810.
The court then repudiated the rationale of Stuver and Gilbreath, stating that giving an instruction such as No. 6 with the initial charge to the jury, i. e. prior to a determination by the jury of guilt or innocence, did not invite the jury to disregard its duty to fix punishment. The court concluded that even assuming the jury in Brown had not agreed on guilt, it was not error when the trial court gave instruction No. 6. Petitioner argues in his Reply that the Constitution and fairness dictate that the rule change announced in Brown be made prospective and not applicable to petitioner. But even under the Stuver-Gilbreath rationale, petitioner was not prejudiced by the instruction because the jury did, in the end, fix punishment.
The other issue raised in regard to instruction No. 6 is whether, in the circumstances in which it was given, it indicated that the trial court believed petitioner was guilty. This inquiry must be guided by two well-established principles. First, "[i]n determining the propriety of a supplemental instruction given the jury, the instructions have to be considered as a whole and the supplementary instruction examined in light of the other instructions previously given." C. Wright, Federal Practice and Procedure: Criminal § 502, at 350 (1969) and cases cited therein. Second, this court cannot assume the jury failed to follow the instructions. Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L. Ed.2d 278 (1957); Bates v. Wilson, 385 F.2d 771, 773 (9th Cir. 1967) (review of denial of habeas corpus). No claim of error in the instructions other than No. 6 has been pointed to by petitioner. The Supreme Court of Missouri correctly stated:
"[t]he trial court did not so state nor imply [that it believed defendant was guilty] and the instruction clearly told the jury that they were to determine guilt or innocence."
State v. Brown, 443 S.W.2d 805, 811 (Mo. en banc 1969).
The question raised by Juror 8, quoted supra, indicated that the jury was concerned with fixing punishment. Instruction No. 6, however, reiterated to the jury in clear terms that it was first to determine guilt or innocence. There are no facts in the record to even suggest that the jury disregarded instruction number 6. This point is ruled against petitioner.
Petitioner also presents the separate argument in his Reply that giving the jury the verdict form relating to instruction No. 6 during its deliberations violated the Sixth Amendment. Petitioner concedes in his Reply that this issue was not resolved by the state courts and was not "adequately developed" *839 at the state court hearing. That is accurate. The issue concerning the verdict form was not raised separately from the issue on instruction No. 6 in the state court. The exhaustion requirement of § 2254(b) is "satisfied when `the same evidence and issues already decided by direct review' in the state courts were presented in the federal habeas corpus petition." Larry Buffalo Chief v. South Dakota, 425 F.2d 271, 278 (8th Cir. 1970) quoting from Brown v. Allen, 344 U.S. 443, 447, 73 S.Ct. 297, 97 L.Ed. 469 (1953). The issue concerning the verdict form arises from a different, although closely connected, factual basis from the issue concerning instruction No. 6 and presents the overall issue of invasion of the province of the jury in a different context. Therefore, as to the verdict form issue, petitioner has not exhausted his state remedies as required by § 2254(b). Larry Buffalo Chief v. South Dakota, supra 425 F.2d at 278.

E.
Petitioner's next contention is that he was denied a fair trial by an impartial jury because the prosecutor peremptorily struck all Negroes from the panel of veniremen solely because of their race. In the petition, the prosecutor's actions are described as "systematic, arbitrary and discriminatory."
The Supreme Court of the United States has drawn a distinction between claims that a prosecutor peremptorily struck all Negroes from a particular jury panel and a plan of systematic peremptory challenges resulting in no Negroes ever serving on petit juries in a jurisdiction. Swain v. Alabama, 380 U.S. 202, 222-224, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). The first problem here is to determine which of these two claims petitioner has raised. The issue regarding the peremptory challenges was first brought up by petitioner during his testimony at the hearing on the 27.26 motion. Petitioner's remarks there were limited to the contention that the prosecutor struck all Negroes from the jury panel in his case. On appeal to the Supreme Court of Missouri from the denial of the 27.26 motion, petitioner's brief stated his position on the peremptory challenges:
"Appellant maintains that the State has employed the discredited policy of using race as the sole, decisional factor, in selecting Appellant's jury, and has therefore trespassed on the Appellant's constitutional rights."
Brief of Appellant, at 6. (Emphasis supplied)
and
". . . the decision on whether Appellant received a fair and impartial jury must rest on the record of his trial alone, and not on someone else's case."

Id. at 16.
The Supreme Court of Missouri apparently viewed petitioner's contention and evidence as limited to the peremptory striking of all Negroes from the panel in his case:
"[t]he record shows that all Negroes on the jury panel were stricken by the state by use of its peremptory challenges, but it does not show that they were stricken because they were Negroes or that this was part of a consistent, systematic practice of the state."
Brown v. State, 470 S.W.2d 543, 544 (Mo.1971) (Emphasis supplied).
In his Reply in this court, petitioner now asks for an evidentiary hearing on whether there was a systematic exclusion policy in all cases involving black defendants.[4] Since this latter issue was neither raised in nor decided by the state courts, petitioner has not exhausted state remedies as required by § 2254(b), and therefore the issue will not be considered here. Larry Buffalo *840 Chief v. South Dakota, supra, 425 F.2d 271, 278 (8th Cir. 1970).
The claim that the prosecutor peremptorily struck all Negroes from the panel at petitioner's trial because of their race is without merit. There is no evidence in the record that race was considered. The same issue was raised in Swain v. Alabama, 380 U.S. 202, 209-222, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) and the holding was summarized as follows:
"We have decided that it is permissible to insulate from inquiry the removal of Negroes from a particular jury on the assumption that the prosecutor is acting on acceptable considerations related to the case he is trying, the particular defendant involved and the particular crime charged."
Swain v. Alabama, supra at 223, 85 S.Ct. at 837. (Emphasis supplied)[5]

F.
Petitioner's final contention is that he was denied effective assistance of counsel at his trial. Petitioner points to the remarks of his appointed trial counsel, in conjunction with a motion to withdraw from the case, that while he had sixteen years of civil trial experience, he had never tried a criminal case and believed he was incapable of providing a proper defense. Petitioner also suggests in his Reply that his appointed counsel had inadequate time to prepare a defense. This latter point is not supported by the record, which shows that (1) counsel was appointed in June, 1967, (2) trial was held September 18, 1967, (3) counsel adequately discussed the case with petitioner on September 10, 1967 and counsel's three previous efforts to discuss the case with petitioner were rebuffed by petitioner. There is no evidence at all to show that counsel failed to secure witnesses with testimony favorable to the defense.
The Eighth Circuit has set out the appropriate standard to be applied to this contention:
"Habeas corpus relief on the ground of incompetency of counsel or denial of effective counsel will be granted `only when the trial was a farce, or a mockery of justice, or was shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference or preparation.'"
Scalf v. Bennett, 408 F.2d 325, 327-28 (8th Cir. 1969) quoting from White v. McHan, 386 F.2d 817, 818 (5th Cir. 1967) (Emphasis supplied).
The Supreme Court of Missouri correctly concluded that
"[t]he record of the trial of the assault case supports the court's findings that appointed counsel performed his duties capably and diligently and that defendant had a fair trial."
Brown v. State, 470 S.W.2d 543, 544 (Mo.1971).
Accordingly, this point is ruled against petitioner.
Petitioner argues in his Reply that an evidentiary hearing should be held in this court on points E and F because certain remarks made by the judge at the 27.26 hearing show that he was biased against petitioner. None of the circumstances listed in § 2254(d)(1)-(8) has been established. This court concludes, as did the Supreme Court of Missouri, that the judge's findings on the 27.26 motion, after a full and fair hearing, were supported by the *841 record. Hence, there is no need for an evidentiary hearing on these points in this court. Petitioner also argues in his Reply that these same remarks show that the judge at the 27.26 hearing, who was also the trial judge, was personally biased against petitioner at his trial. This issue was not raised in the state courts. Therefore, petitioner has not exhausted state remedies as to this issue and it will not be considered here. 28 U.S.C. § 2254(b).
For the foregoing reasons, the petition for a writ of habeas corpus is denied and the action is dismissed.
So ordered.
NOTES
[1] The two common law rules are found in Herbert v. Turball, 1 Keble 590, 83 Eng.Reprint 1129, 1 Sid 162, 82 Eng. Reprint 1033 (1633) (fractions of days are not computed) and Nichols v. Ramsel, 2 Mod. 280, 86 Eng.Reprint 1072 (1677) (person reaches next year of age at first moment of day prior to anniversary of his birth). See also, Annot. 5 A.L.R.2d 1143.
[2] The most likely contention would be denial of equal protection. U.S.Const. Amend. XIV, § 1. The Fourteenth Amendment does not prohibit a state from treating different classes of persons in different ways. Barbier v. Connolly, 113 U.S. 27, 5 S.Ct. 357, 28 L.Ed. 923 (1885). The classification "must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920). Classification on the basis of age for determining jurisdiction over persons allegedly committing crimes has withstood a variety of attacks in over forty jurisdictions. In re Gault, 387 U.S. 1, 14-15 n. 15, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) citing Paulsen, Kent v. United States: The Constitutional Context of Juvenile Cases, 1966 Sup.Ct. Review 167, 174. Under the interpretation given § 211.031(2), R.S.Mo. (1959) by the Missouri Supreme Court, all persons, including petitioner, who commit crimes on their seventeenth birthday are treated alike. The propriety of treating those who commit crimes on their seventeenth birthday differently from those who commit crimes a day or two before their seventeenth birthday is settled by recognizing that the line must be drawn somewhere. See Mason v. Henderson, 337 F.Supp. 35, 37 (E.D.La.1972).
[3] Petitioner alleged in a motion for new trial and on appeal to the Supreme Court of Missouri additional facts, not alleged in his petition here, concerning the lack of necessity in bringing Rodgers into court on a stretcher. The Supreme Court of Missouri concluded that these facts were insufficient to show that it was unnecessary for Rodgers to be brought into court on a stretcher. State v. Brown, 443 S.W.2d 805, 808 (headnote 4) (Mo. en banc 1969).
[4] Petitioner stated at the 27.26 hearing that in his trial for another crime a Negro sat on the jury.
[5] The Court went on to state that the assumption might be overcome by a showing that the state

"in case after case, whatever the circumstances, whatever the crime and whoever the defendant or victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries. . . ."
Swain v. Alabama, supra at 223, 85 S.Ct. at 837.